## IN RE LITTLE

No. 71–244.  Decided January 24, 1972

PER CURIAM.

Petitioner was convicted of committing a direct contempt of a judge of the District Court Division of the Forsyth County, North Carolina, General Court of Justice.  He was sentenced to 30 days in jail as summary punishment authorized by General Statutes of North Carolina §§ 5–1 (1) and 5–6.  He sought habeas corpus in the Superior Court Division of the General Court.  That court denied relief after hearing oral argument but without receiving evidence.  Both the North Carolina Court of Appeals and the North Carolina Supreme Court denied review by certiorari.

Neither the order of the District Court nor the judgment of the Superior Court details the events leading to the conviction.  The petition recites these events, however, and the State's response does not challenge the accuracy of the recital.  Petitioner's trial on a charge of carrying a concealed weapon was scheduled for March

8, 1971, in the District Court at Winston-Salem. Petitioner appeared and filed a written motion for continuance by reason of another trial engagement of his retained counsel in Charlotte. The trial judge denied the motion and proceeded with the trial. Without benefit of counsel petitioner attempted to defend himself. In summation following the close of the evidence petitioner made statements that the court was biased and had prejudged the case and that petitioner was a political prisoner. The trial judge adjudged petitioner in contempt for these statements. The court's order recites that "[t]he Court at this point informed the [petitioner] that he was in contempt as the Court felt that these remarks were very disrespectful and tended to subvert and prevent justice," and further recites that "[t]he Court concludes on the foregoing facts that the conduct of the [petitioner] and the words spoken by him in the presence of the Court were contemptuous, that they reflected on the integrity of the Court and tended to subvert and prevent justice."

The order also recites, "As the defendant was being removed from the courtroom by deputy sheriff [following the contempt adjudication], he spoke out and called the undersigned presiding judge a M----- F-----." This language in a courtroom is, of course, reprehensible and cannot be tolerated. But this was not relied upon by either the District Court or the Superior Court for the conviction and sentence and the State defends the conviction in this Court without any reference to it. We therefore also lay it aside for the purpose of our decision.

The Superior Court had the District Court order before it but no other evidence. The Superior Court judgment tracks the statutory language in reciting that petitioner's statements "directly tended to interrupt its proceedings and to impair the respect due the District Court's authority," and, further, the District Court's

conclusion that the statements " 'reflected on the integrity of the Court and tended to subvert and prevent justice' amounted to a finding by the District Court that the words were wilful and intentionally used and that the words used tended to interrupt the Court's proceedings and to impair the respect due its authority." *

We hold that in the context of this case petitioner's statements in summation did not constitute criminal contempt. The court's denial of the continuance forced petitioner to argue his own cause. He was therefore clearly entitled to as much latitude in conducting his defense as we have held is enjoyed by counsel vigorously espousing a client's cause. *In re McConnell,* 370 U. S. 230 (1962). There is no indication, and the State does not argue, that petitioner's statements were uttered in a boisterous tone or in any wise actually disrupted the court proceeding. Therefore, "The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil . . . . [T]he law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion. Judges are supposed to be men of fortitude, able to thrive in a hardy climate." *Craig* v. *Harney,* 331 U. S. 367, 376 (1947). "Trial courts . . . must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." *Brown* v. *United States,* 356 U. S. 148, 153 (1958).

---

*Section 5–1 (1) makes punishable for contempt "[d]isorderly, contemptuous, or insolent behavior committed during the sitting of any court of justice, in immediate view and presence of the court, and directly tending to interrupt its proceedings, or to impair the respect due to its authority."

The reversal of this conviction is necessarily required under our holding in *Holt* v. *Virginia,* 381 U. S. 131 (1965). There attorneys filed motions that the trial judge recuse himself and for a change of venue, alleging that the judge was biased. The motion for change of venue alleged that the judge intimidated and harassed the attorneys' client. The court adjudged the attorneys in contempt for filing these motions. We reversed for reasons also applicable here:

> "It is not charged that petitioners here disobeyed any valid court order, talked loudly, acted boister-ously, or attempted to prevent the judge or any other officer of the court from carrying on his court duties. Their convictions rest on nothing whatever except allegations made in motions for change of venue and disqualification of Judge Holladay be-cause of alleged bias on his part." *Id.,* at 136.

The petition for certiorari is granted and the judgment is reversed.

*It is so ordered.*

MR. CHIEF JUSTICE BURGER, with whom MR. JUSTICE REHNQUIST joins, concurring.

I agree with the Court's disposition of the case but something more needs to be said.

A contempt holding depends in a very special way on the setting, and such elusive factors as the tone of voice, the facial expressions, and the physical gestures of the contemnor; these cannot be dealt with except on full ventilation of the facts. Those present often have a totally different impression of the events from what would appear even in a faithful transcript of the record. Some measure of the flavor of what really occurred in this episode, and of the petitioner's attitude and demeanor, how his spoken words impressed those present, may be

gleaned from the events and utterances described in the Court's *per curiam* opinion.

The North Carolina court is, of course, free to promptly summon this petitioner before it and, observing the strictures of *Mayberry* v. *Pennsylvania,* 400 U. S. 455 (1971), issue process requiring him to show cause why he should not be held in contempt for the conduct and utterances following the contempt adjudication.