476 So.2d 1369 (1985)
W. Robert MANN, Appellant,
v.
STATE of Florida, Appellee.
No. 85-110.
District Court of Appeal of Florida, Second District.
October 18, 1985.
William L. Blackwell of Blackwell & Beal, P.A., Naples, for appellant.
Lynn Gerald, Jr. of Gerald, Cary & Duncan, Fort Myers, for appellee.
FRANK, Judge.
The appellant, W. Robert Mann, a member of the Florida Bar, has sought our *1370 review of a judgment finding him guilty of direct criminal contempt as a result of statements uttered at a hearing held on April 26, 1984, attacking the dignity and integrity of the lower court presided over by the Honorable Hugh E. Starnes. Judge Starnes recused himself and the matter was transferred to the Honorable Charles T. Carlton who, on December 10, 1984, conducted an evidentiary hearing pursuant to an order to show cause issued by Judge Starnes. Although Rule 3.830 contemplates the summary punishment of a direct contempt, Judge Starnes, and subsequently Judge Carlton, followed the procedures contained in Rule 3.840, thus according Mr. Mann the procedural fairness contemplated in Bloom v. State of Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) and Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). On December 10, consistent with Rule 3.830 of the Florida Rules of Criminal Procedure, Judge Carlton pronounced sentence in open court; he withheld a formal adjudication of guilt, placed Mr. Mann on probation for 179 days and required that he perform 40 hours of community service as an attorney. Upon the completion of such service, evidenced in an affidavit furnished to Judge Carlton, probation would terminate. When asked by Mr. Mann's counsel if he would stay the matter, Judge Carlton stated, in effect, that the filing of a notice of appeal would be treated as a stay of execution of the judgment. A timely notice was filed.
Mr. Mann raises four issues on appeal. We find it necessary to pass only upon the contentions that: (1) the transcript of the proceeding at which the alleged contumacy occurred fails to disclose the element of "intent" which must be established beyond a reasonable doubt, and (2) the 90 day speedy trial rule found in Rule 3.191(a)(1) of the Florida Rules of Criminal Procedure entitled Mr. Mann to a discharge from criminal contempt. We find no merit in the remaining points. Accordingly, we affirm Judge Carlton's rejection of the applicability of the 90 day speedy trial rule and the ultimate finding that Mr. Mann committed direct criminal contempt.
A summary of the events preceding the April 26 hearing is warranted. The record reveals that the appellant and his opposing counsel acted antagonistically toward each other at various stages of a personal injury action. In the course of a pretrial conference held on November 28, 1983, Judge Starnes commented that he perceived the hostile behavior of Mr. Mann and his opponent to be unethical. He instructed both attorneys to remain in the presence of the court reporter and to resolve and agree upon the terms of a pretrial order. At that point, Judge Starnes terminated the conference and left the hearing room. Prior to his departure, Mr. Mann asked if he could make a statement. Judge Starnes denied the request and departed. Mr. Mann then placed the following statement on the record:
MR. MANN: I want the record to show that the Court has charged Counsel for the Defendant with being unethical without any explanation whatsoever as to what he considers to be unethical. And I'd like the record to also show that the Court has walked out of the hearing room and has refused to set forth in the record what conduct on the part of the Attorney for the Defendant the Court has considered to be unethical.
I would like also the record to reflect that the Court apparently came into this hearing today with a chip on his shoulder as to what he viewed the conduct between the attorneys for the parties are. And hopefully that is the reason that he made the charge against me in particular as to unethical conduct without outlining or even suggesting what it is. I asked what I have on the record.
And I also object to the Court absenting himself from this hearing room and from the pre-trial conference when I, as Attorney for the Defendants, am here present and prepared to pre-try the case.
After a period of attempting to reach agreement with respect to certain pretrial matters, Mr. Mann went to Judge Starnes' private office and stated:

*1371 If it please the Court, I think we've reached a point where we need the Court to sit down with us in this pre-trial. I think you should have throughout. You saw fit to leave, but there's matters here I'd like to take up. I'm here on your notice and I'd like to get these things over with.
Judge Starnes reentered the hearing room and participated in the effort to achieve a pretrial order. During this aspect of the proceeding, the following colloquy occurred:
MR. MANN: Well, Judge, with all due respect to you I think this whole thing is your fault. There was an objection filed to his Notice of Trial and I wrote a separate letter to you. Now you may not remember this, but I said, "Judge, I'm sure when this kind of motion is filed the Clerk of the Court doesn't rush up to you with that motion" 
... "therefore here is my objection." And after that objection was filed you sent out an order setting it for pre-trial. When you did that I honestly and truly don't think this case was ready to be pre-tried, but I'm here on your order. But I think you set in motion the problems that we have in this case. If you had gone ahead and looked at this thing objectively and said, "Now really, is this case, number one, ready for trial; and is it, number two, ready for pre-trial." And here I sit and have not even had a chance to have my motions disposed of and I don't think that's right.
And I'm candid enough to tell you that you're the author of your own misfortune. That's my humble opinion about it. And to  I'm going to stand, because I'm upset about this. And for you to walk out of this pre-hearing conference I think is in violation of the Rules as well. Lastly and most importantly, for you to accuse me of unethical conduct and than to flatly refuse what it is that you think that I have done is wrong I think is judicial misconduct. Now, that's my honest opinion about the matter. And I've never had a judge, never had a judge accuse me of unethical conduct from the bench, number one, and much less have any judge ever tell me that I'm unethical but not tell me what it was I did.
THE COURT: You know, usually I'd probably get mad when somebody said something like that. You have a right to say it and there is some truth in part of what you say. But there's going to be one captain of every ship and I'm going to be captain of the ship that goes on in this courtroom. And I will stand on the record that's been made here.
My point is  and you don't want to accept it  is that you two lawyers are not cooperating and you're taking up unnecessary time for the Court and that's the ultimate point.
You're offended. I don't blame you for being offended, and to some extent I think you are right.
I did jump the gun and I'm trying to tell you why. Because I get tired of seeing lawyers squabble between themselves and taking up unnecessary court time. And after the last hearing we had, it's ridiculous for a notice to be set for taking a party this afternoon and neither lawyer able to resolve having it changed without any communciation between each other and we got a motion. And I mean, that's what I'm in the midst of explaining. You set the notice without checking with his office, he set the motion without checking with your office and nothing was gained. You didn't call him up when you got the motion and say, "I'll do it later."
And I'm not going to change one thing I said. Now, what other motion is there left to be decided and we'll decide them all.
MR. MANN: Well, I'm moving now that the Court file a grievance against me and set forth the details of what the Court claims or thinks in its own mind that I have been unethical in the conduct of this case. You seemed to take great umbrage at my initial motions against discovery, but they were not made for any reason other than I thought they were harassing and 

*1372 THE COURT: You had every right to make your motions and I ruled on them and what I 
MR. MANN: But it made you mad.
THE COURT: No. Your motions did not make me mad. The subsequent conduct of this case involving discovery has made me mad. Now that's over. That's not a part of the pre-trial hearing. You file any motion or do anything you want.
* * * * * *
THE COURT: Okay. What is your position on that, Mr. Mann?
MR. MANN: My position is, Judge, just as I told you. I objected to this case being noticed for trial. The Court overlooked it or ignored it, whatever you want to call it, and sent out an order setting the case for pre-trial conference. I have complied with that and part of that order is that we list witnesses to be used at trial, that we list exhibits to be used at trial and the other matters which have to do with trying this case. And what he's asking you is, well, let's forget about the Court's pre-trial order and we'll just coast along and, you know, if somebody comes up with something within a certain time frame it can be just filed in the court file. And that isn't the way a case is suppose to be handled. And I told 
THE COURT: I agree with you.
MR. MANN: And I told him I wasn't going to buy a pig in a poke. Here and now is supposedly when this case is suppose to be pre-tried. And after you left I put on the record that I objected to the Court absenting himself from this pre-trial conference when I didn't set it and the Court did, and it took hours and hours of preparation to file the proper papers and I think you should have been here.
Notwithstanding that Mr. Mann's November 28 utterances were neither included within the specific references to his misconduct contained in the charging instrument nor were they relied upon by Judge Carlton in reaching his decision, the transcript of the November 28 pre-trial conference was not only stipulated into the December 10 contumacy hearing but Mr. Mann testified on direct examination to the November 28 events. Our allusion to the November 28 conference and the words which were spoken by Mr. Mann is not to expand either the specific charges contained in the order to show cause or that which was considered by Judge Carlton in reaching his determination to adjudge Mr. Mann a contemnor. Rather, our purpose in considering the November 28 transcript is twofold: to describe the pattern or sequence of events as they interrelate with the words forming the basis of the charges against Mr. Mann and to assess the contention urged here that the record fails to reflect intent, an element deemed to be essential to the contempt finding.
We now turn to the April 26 hearing  the hearing at which the charged contumacious words were spoken by Mr. Mann. The April 26 hearing focused on a motion in limine filed by Mr. Mann's opposing attorney. It is evident from the transcript of that hearing that Mr. Mann was angry with his opponent prior to Judge Starnes entering the hearing room. Almost immediately upon Judge Starnes entry into the hearing room, Mr. Mann launched an attack upon him. The excerpts which follow, extracted from the April 26 hearing, were specifically identified in the order to show cause as the basis for the alleged contumacy.
THE COURT: Good afternoon. Mr. Scheiner, you have a motion to  a Motion in Limine.
MR. SCHEINER: That's correct, Your Honor.
MR. MANN: May I first ask the Court, are you in the midst of a trial?
THE COURT: Yes, I am.
MR. MANN: So you made these special arrangements for this hearing?
THE COURT: No. Why?
MR. MANN: Well, number one, the last time that I was before the Court, the Court's judicial temperament, or whatever you may want to call it, was not the most that I would expect from a circuit judge. And if you're in the midst of a *1373 trial, you may be under the same kind of pressures, because 
THE COURT: I think, sir, you better sit down and when your turn comes to argue 
MR. MANN: All right. So you've blown your stack already, huh?
Notwithstanding Mr. Mann's objection to the conduct of the hearing, Judge Starnes began hearing argument pertinent to the motion in limine. Mr. Mann's anger on this occasion originated in the fact that the motion had been filed several weeks prior to April 26 but a supporting memorandum was not received by him until just prior to the hearing. Judge Starnes accorded Mr. Mann an opportunity to respond to his opponent's explanation of the reason for the delivery of the memorandum close upon the moment of the in limine hearing. During his argument, Mr. Mann, with reference to the November 28 pretrial conference, said "so here we are, with what was left of a Pre-trial Conference after you condescended to come back into the courtroom... ." After that statement, Mr. Mann blended the comment set forth below into his substantive argument:
I've been jerked around, that's the truth of the matter. And I'm making this charge against Mr. Scheiner. I asked you previously, when you accused me of unethical conduct, to file grievances and specify the reasons for them. And you have done nothing. And I have reached a point, with being horsed around by Mr. Scheiner, and this Court not filing a grievance after charging me with unethical conduct, with asking the Court to possibly recuse himself from trying this case.
The following exchange came upon the heels of Judge Starnes' announcement that he granted the motion in limine:
THE COURT: I'll grant the Motion in Limine without prejudice, to a proffer of some reasonable basis to present the information.
Mr. Mann, I'll give you the opportunity 
MR. MANN: I don't understand what the Court's done.
THE COURT: Well 
MR. MANN: You grant the motion?
THE COURT: Just a minute sir. I've ruled. I will give you an opportunity to apologize, not to me  you have every right to dislike me as a person if you wish  but to the dignity 
MR. MANN: It's your conduct as a judge.
THE COURT: I think you had better let me finish. But to the dignity of the Court and the words you have used. Do [you] wish to do so?
MR. MANN: I have asked you to file a grievance. You haven't done that.
THE COURT: I don't believe you've answered my question.
MR. MANN: Well, I don't know whether I understand what your question is.
THE COURT: Okay, I'll be back for the other hearing in a moment.
MR. MANN: Well, Judge 
THE COURT: I would like you to prepare an order.
MR. SCHEINER: Thank you, sir.
MR. MANN: The hearing's concluded, sir?
You're going to walk out again; is that right?
On May 15, 1984, Judge Starnes held a conference at which the personal injury action was terminated upon an offer of judgment, and on that occasion he in effect told Mr. Mann he would accept an apology. Mr. Mann declined the offer. In response to the declination, Judge Starnes told him he would issue an order to show cause.
We begin the analysis upon which we affirm Judge Carlton's decision in this matter by observing that Judge Starnes exercised remarkable self-control in the face of Mr. Mann's verbal assaults. Here, in contrast to the setting found in Ray v. State, 352 So.2d 110 (Fla. 1st DCA 1977), we need not be concerned with the manner in which Mr. Mann expressed his words. Non-verbal demeanor, tone or mood play no part in evaluating the words spoken by Mr. Mann. *1374 The quality and nature of his words, alone, repeated on several occasions, poignantly describe a measure of insolence from which there can be no escape. Cf. In Re Little, 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972). Similarly, this case does not present a contemnor who in a moment of rage uttered offensive words which upon reflection were regretted. Rather, the record portrays an attorney whose disrespectful words perfused virtually each of his several appearances before the trial court. Indeed, even when the litigation had ended with the acceptance of Mr. Mann's offer of judgment, Judge Starnes' proffer of amnesty was greeted with an expression of arrogance: "Well, I don't think this is the appropriate time or place." Obviously, Judge Starnes found the time and place suitable.
"Contemptuous conduct, though a public wrong, often strikes at the most vulnerable and human qualities of a judge's temperament." Bloom, 391 U.S. at 202, 88 S.Ct. at 1482. Based upon the record before us, it is evident beyond dispute that Judge Starnes acted with an inordinately unique degree of restraint in circumstances repeatedly putting his patience to the test. We recognize, of course, that "the power to punish for criminal contempt should be exercised cautiously and sparingly." Krueger v. State, 351 So.2d 47, 49 (Fla. 3d DCA 1977). We are equally aware that the power is not to be used "to avenge a personal affront, but to appropriately punish for an assault or an aspersion upon the authority and dignity of a court or judge." Ex Parte Earman, 85 Fla. 297, 95 So. 755, 760-761 (1923). "Trial courts ... must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice." Craig v. Harney, 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546 (1947). Viewing the instant record in its entirety leaves no question that Judge Carlton was persuaded from the evidence before him that Mr. Mann's verbal salvos were nothing other than an incursion upon the dignity and authority of the trial court. Assuming, but not for one moment conceding, that Mr. Mann's conduct could be perceived as a manifestation of over-zealous desire to advance the interests of a client, we find absolutely nothing in his words capable of achieving that end. The gratification of pique, seemingly inspired by events he found displeasing that occurred during the personal injury litigation, became his goal at the price of the trial court's right to function without discord. Such behavior cannot go unpunished. Mr. Mann was endowed no differently than any other attorney with the risk-free right to disagree with Judge Starnes. But when he chose to express his disagreement in insulting and degrading words, he properly became the subject of a contempt proceeding having as its object the vindication and preservation of the trial court's dignity and authority. Mr. Mann's testimony under oath that he did not intend to offend the dignity and authority of the court, represented in the personage of Judge Starnes, falls short of the mark and "is not sufficient to deprive a trial judge of the power to punish for contempt... ." Sewell v. State, 443 So.2d 164, 165 (Fla. 1st DCA 1983). Here, "a finding of intent is supported by the facts." Id. We have no difficulty in sustaining Judge Carlton's conclusion that Mr. Mann's verbal deportment was "willful" and "calculated to hinder the orderly functions of the court." Id. A post hac denial of improper intent will not overcome the recorded words which, as in the present matter, palpably reflect an on-going disdainful disposition toward the trial court. The requisite intent is evident beyond a reasonable doubt. See Scott v. Anderson, 405 So.2d 228, 231-232 (Fla. 1st DCA 1981).
In spite of the uncertainty which may have existed at an earlier time, it is well settled that criminal contempt is a crime. Aaron v. State, 284 So.2d 673 (Fla. 1973). It is no less certain that a criminally charged contemnor enjoys elemental procedural safeguards in the conduct of the adjudicatory proceeding. Id.; Andrews v. Walton, 428 So.2d 663 (Fla. 1983). In Aaron, however, the supreme court was concerned only with the constitutional question *1375 of entitlement to a jury trial in the context of an indirect contempt; it expressly prescinded from any consideration of due process to be accorded a direct contemnor. 284 So.2d at 677, fn. 16. We conclude, in the present context, that Rule 3.191(a)(1) is not embodied within the panoply of safeguards customarily identified with "due process."[1] In any event, Mr. Mann's claim to a speedy trial is not grounded upon either the federal or state constitutions. Rather, the notion has its source in a literal linkage of Rule 3.010, which provides that "[t]hese rules shall govern the procedure in all criminal proceedings in State courts including proceedings involving direct and indirect criminal contempt," with the fortuity that he was accorded that specie of procedural due process prescribed for the prosecution of an indirect contempt. Obviously, had Judge Starnes elected to exercise the power of summary disposition conferred upon him by Rule 3.830, the question of entitlement to Rule 3.191(a)(1) could not have surfaced. Thus, the speedy trial issue is an anomaly arising wholly from the grant to Mr. Mann of a prolonged opportunity to defend his contumacy before a judge other than Judge Starnes.
We reject the view, implicit in Mr. Mann's reliance upon Rule 3.191(a)(1), that simply by according a direct contemnor the procedures contained in Rule 3.840, such person's defenses are enlarged to include the benefit of Rule 3.191(a)(1) as a barrier to adjudication and punishment.[2] The harmonization of Rule 3.010 and 3.191(a)(1) does not require that result. We need not catalogue the many rules which are susceptible only of a selective application depending upon the nature of the proceeding. Rule 3.010 is merely a prefatory policy declaration that the rules which succeed it are to be exclusively observed in the conduct of criminal proceedings within the state's criminal justice system; it is not a mandate that every rule is to be applied to every proceeding. On this reasoning, alone, we would be warranted in concluding that there is no right or claim to the operative effect of Rule 3.191(a)(1) asserted here only as an outgrowth of Judge Starnes not treating Mr. Mann's contemptuous utterances summarily. We need not, however, rest our decision upon the foregoing. We find an equally, if not more, persuasive ground for our resolution of this issue in the interplay between Rules 3.010 and 3.020. Rule 3.020 expresses a purpose that the Florida Rules of Criminal Procedure "be construed to secure simplicity in procedure and fairness in administration." (Emphasis added). Indeed, the Florida Rules of Criminal Procedure "should be given a construction calculated to further justice, not to frustrate it." Singletary v. State, 322 So.2d 551, 555 (Fla. 1975). Rules 3.010 and 3.020 "which deal with the same subject matter should be construed together and in light of each other." Dibble v. Dibble, 377 So.2d 1001, 1003 (Fla. 3d DCA 1979); Rowe v. State, 394 So.2d 1059 (Fla. 1st DCA 1981). With one exception, Judge Starnes would have acted well within the powers conferred upon him by Rule 3.830 if on April 26 he had then and there decided to follow and apply the summary procedural steps spelled out in that rule and adjudicated Mr. Mann in contempt. See Vines v. Vines, 357 So.2d 243 (Fla. 2d DCA 1978). The nature of the contumacy defines the exception  the conspicuous attack upon Judge Starnes required that he, out of a concern for fairness, the exercise of well founded discretion and the sense of the directive expressed in Rule 3.840(a)(5), avoid enmeshing himself as the trier of fact and law in a controversy in which he was at the *1376 epicenter. Due process in a direct criminal contempt proceeding demands that the contemnor "be given a public trial before a judge other than the one reviled by the contemnor." Mayberry, 400 U.S. at 466, 91 S.Ct. at 505. We harbor little doubt based upon the record before us, although our decision in no degree turns on this observation, that had Judge Starnes not divested himself of a role in this matter, Mr. Mann would have been armed with at least a colorable claim to the denial of due process. The Mayberry principle has been woven into Rule 3.840(a)(5) and we hold the spirit of that rule to be no less a part of Rule 3.830 in the circumstance where a direct contempt "involves disrespect to or a criticism of a judge." Rule 3.840(a)(5). Thus, heeding a constitutionally imposed obligation not to deny Mr. Mann an impartial tribunal, Judge Starnes recused himself and Judge Carlton was assigned the matter by the Chief Justice of the Florida Supreme Court. The appointment of Judge Carlton to hear and determine the issues raised by the order to show cause did not alter the nature of Mr. Mann's contumacy; it remained at all times a direct criminal contempt exposing him to a summary proceeding to which Rule 3.191(a)(1) would not attach. Merely because Mr. Mann's vituperative words aimed at Judge Starnes dictated the latter's recusal, the proceeding was not transformed into one conferring upon Mr. Mann a defense he did not otherwise enjoy. At the point where Judge Starnes removed himself from this matter, Judge Carlton, before whom the direct contempt did not occur, had no option other than procedurally to pattern his handling of the matter in a manner paralleling that found in Rule 3.840.
Based upon the foregoing we affirm the decision of the lower court adjudicating Mr. Mann in direct criminal contempt and the sentence imposed upon him.
SCHEB, A.C.J., and SCHOONOVER, J., concur.
NOTES
[1] We are not faced with, have not considered, nor do we pass upon the applicability of Rule 3.191(a) to indirect criminal contempt proceedings conducted pursuant to Rule 3.840.
[2] The initial paragraph in Rule 3.840(a) offers no impediment to the result we have reached:

"A criminal contempt except as provided in the preceding subsection concerning direct contempts, shall be prosecuted in the following manner." The obvious purpose of the paragraph is to insure that the trial court retain the ability instantly to remedy contemptuous conduct occurring in its presence.