904 F.2d 700
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
W. Michael LOVERN, Plaintiff-Appellant,
v.
Doug LYONS, Counselor; Physician's Attendant Weldon; Dr.
Powell; Mark Henry; Physician's Attendant Kelly; Officer
Gonzales; Lt. Chalmers; Capt. Brewe; Mr. Falzone; Mr.
Perry; Norman A. Carlson; Sam Samples; Lt. Doddrill;
Jane Doe; Mr. Farmer; Mr. Chadwick; Dr. McWay; Mr.
Willingham, Defendants-Appellees.
 No. 89-5635.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Jan. 25, 1990.
Decided: May 29, 1990.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Fox, District Judge. (CA-87-703-CRT).
 William E. Martin, Federal Public Defender; Edwin C. Walker, Assistant Federal Public Defender, Raleigh, N.C., for Appellant.
 Margaret Person Currin, United States Attorney; Stephen A. West, Assistant United States Attorney, Raleigh, N.C., for appellees.
 E.D.N.C.
 REVERSED.
 Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 W. Michael Lovern appeals the order and judgment of the district court holding him in criminal contempt and fining him $100 pursuant to 18 U.S.C.A. Sec. 401 (West 1966).* Because the evidence was insufficient to conclude that Lovern's conduct constituted an obstruction of the administration of justice, we reverse.
 
 I.
 
 2
 Lovern, a prisoner at the Federal Correctional Institution at Butner, North Carolina (Butner), proceeding pro se, filed an Emergency Motion for Writ of Habeas Corpus in which he raised a number of Bivens-type complaints about his treatment at Butner. The defendants, prison and medical officers at Butner, moved to dismiss Lovern's action or, alternatively, for summary judgment. The district court referred this matter to United States Magistrate Wallace W. Dixon who filed a Memorandum and Recommendation recommending that Lovern's action be dismissed.
 
 
 3
 Lovern subsequently filed a pleading entitled "Motion in Response to Magistrate's Memorandum and Recommendation" objecting to the recommendation in which he stated in part:
 
 
 4
 As an individual who believes in god [sic], this country, and the system, I have never been more shocked by a written opinion from the court. Judge Dixon's memorandum shows so much malice and prejudice towards the plaintiff that it's hard to keep in mind that he is suppose [sic] to be an independent trier of fact. In this case he sounds more like the Assistant U.S. Attorney. Obviously his loyalty is still back at his old office.
 
 
 5
 * * *
 
 
 6
 * * *
 
 
 7
 The Judge doesn't waste any time in misquoting the real facts.... This is the first sign of just how uninterested the Judge is in plaintiff's pleadings.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 Here again the Judge obviously believes the defendant's [sic] since the plaintiff's affidavit tells a different story.... If the court will just read ALL of plaintiff's pleadings that have been filed in this case, you will see a completely different story.... All Judge Dixon has done is write a brief that primarily says that the plaintiff's version of the facts is a lie. If Judge Dixon would share his crystal ball with the rest of the judicial system there would be no need for anymore [sic] trials.
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 Again I just don't know what more to say about Judge Dixon's bias [sic] statements concerning the facts in this case. It's as if he still works for the U.S. Attorney's Office in Raleigh.
 
 
 14
 Without trying to be redundant plaintiff must point out one more ridiculous statement....
 
 
 15
 It is very obvious that Judge Dixon is afraid that the defendant's [sic] version of the facts just won't hold up under the scrutiny of cross-examination and god [sic] forbid any testimony from witnesses who are not parties to the suit.
 
 
 16
 Judge Dixon's recommendation should be thrown out and this case set for pretrial hearings.
 
 
 17
 The district court adopted the Magistrate's recommendation and dismissed Lovern's action. It also scheduled a hearing and directed that Lovern appear and show cause why he should not be held in criminal contempt because of the language used in his motion. Fed.R.Crim.P. 42(b).
 
 
 18
 The only evidence of contempt presented at the hearing was the pleading objecting to the Magistrate's recommendation. Lovern moved to dismiss the criminal contempt charge on the ground that all the elements of criminal contempt were not proved beyond a reasonable doubt. After taking Lovern's motion under advisement and subsequently holding a second hearing, the district court denied Lovern's motion to dismiss, found him in criminal contempt, and fined him $100.
 
 II.
 
 19
 A federal district court has the power to punish misbehavior of persons in its presence.
 
 
 20
 A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as--
 
 
 21
 (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice....
 
 
 22
 18 U.S.C.A. Sec. 401. In United States v. Warlick, 742 F.2d 113 (4th Cir.1984), we stated that:
 
 
 23
 In order for the conduct to be punishable under 18 U.S.C. Sec. 401(1) four essential elements must be established beyond a reasonable doubt:
 
 
 24
 (1) Misbehavior of a person,
 
 
 25
 (2) which is in or near to the presence of the Court,
 
 
 26
 (3) which obstructs the administration of justice, and
 
 
 27
 (4) which is committed with the required degree of criminal intent.
 
 
 28
 Id. at 115.
 
 
 29
 While we do not condone the highly inappropriate and totally unjustified statements made about Magistrate Dixon, a pro se litigant is entitled to wide latitude in framing pleadings and attempting to present claims and grievances. Lovern's motion, which did not disrupt court proceedings or hinder the operation of the justice system, did not rise to a level "which obstructs the administration of justice" and thus did not constitute criminal contempt. See In re McConnell, 370 U.S. 230, 234 (1962) (question is whether defendant interfered with " 'the performance of judicial duty' ") (quoting Ex parte Hudgings, 249 U.S. 378, 383 (1919)). In In re Little, 404 U.S. 553 (1972) (per curiam), the Supreme Court stated:
 
 
 30
 "The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil.... [T]he law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion. Judges are supposed to be men of fortitude, able to thrive in a hardy climate."
 
 
 31
 Id. at 555 (quoting Craig v. Harney, 331 U.S. 367, 376 (1947)). " 'Trial courts ... must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice.' " Id. (quoting Brown v. United States, 356 U.S. 148, 153 (1958)).
 
 
 32
 We do not intend to convey to pro se litigants that they now have a license to engage in disrespectful commentary in their pleadings, for certainly a point could be reached when inappropriate language would provide a basis for finding criminal contempt. That point, however, was not reached in this case.
 
 REVERSED
 
 
 *
 On appellees' motion, the case was submitted on briefs without oral argument