2022 IL App (2d) 220037-U
No. 2-22-0037
Order filed December 2, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-1828 |
| CHRISTOPHER ROSARIO, | ) ) ) | Honorable Donald M. Tegeler Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*: Conviction of direct criminal contempt of court was proper where defendant directed a profane word at the trial judge. The conduct, which had no purpose other than to show disrespect for the judge, demeaned the dignity of the proceedings.

¶ 2    Defendant, Christopher Rosario, appeals from an order finding him in direct criminal contempt of court and sentencing him to six months in jail. Defendant contends that his utterance of the word "f***" at a pretrial hearing was an insufficient basis for the conviction. We affirm.

¶ 3                                        I. BACKGROUND

¶ 4    On November 12, 2015, defendant was indicted for unlawful possession of a firearm by a street gang member (720 ILCS 5/24-1.8(a)(1) (West 2014)), unlawful possession of a weapon by a felon (*id.* § 24-1.1(a), and unlawful sale or delivery of a firearm (*id.* § 24-3(A)(d)).  On January 6, 2022, the trial court held a hearing on defendant's motion to dismiss the indictment, based on an alleged speedy-trial violation.  The court and counsel for both parties started discussing the time defendant spent in custody and, in particular, whether the court revoked his bond in March 2018. The proceeding continued:

"THE COURT: There is no order saying bond revoked on March 21st. ***.  On August 30th [defendant] did not appear.  We were resetting a motion.  We continued it to September 20th.  On September 20th it was continued on—

THE DEFENDANT: (Indecipherable)

THE COURT: —the Defense motion.

THE DEFENDANT: (Indecipherable)

THE COURT: Mr. Rosario, if you don't be quiet I'm going to remove you from the courtroom, do you understand me?

THE DEFENDANT: (No audible response)

THE COURT: Do you?

THE DEFENDANT: (No audible response)

THE COURT: Mr. Rosario, I'm talking to you.  Mr. Rosario, look at me.

THE DEFENDANT: What happened?

THE COURT: Do you understand me?  If you don't be quiet while I'm talking—

THE DEFENDANT: (Indecipherable)

THE COURT: —I'll remove you from the courtroom.

THE DEFENDANT: And that's fine. That's—

THE COURT: Do you want to be removed?

THE DEFENDANT: No, I don't want to be removed.

THE COURT: Then be quiet.

THE DEFENDANT: I was removed for a year in '18.

THE COURT: Be quiet.

THE DEFENDANT: A year.

THE COURT: Deputy, take him.

MR. SLAW [(DEFENSE ATTORNEY)]: Your Honor, I—

THE COURT: No. Mr. Rosario continues to argue with this court. He continues to interrupt—

THE DEFENDANT: (Indecipherable)

THE COURT: —this court. He does not deserve to be in this court. Take him in back until he can behave himself.

MR. SLAW: Your Honor, I'm objecting.

THE COURT: You may be objecting, but I'm not. He needs to learn to control his temper—

THE DEFENDANT: You (indecipherable)—

THE COURT: —and his voice.

Rosario—

THE DEFENDANT: (Indecipherable)

THE COURT: —be quiet

THE DEFENDANT: (Indecipherable)

THE COURT: One more word and I'll hold you in direct criminal contempt of court.

THE DEFENDANT: Or, or—

THE COURT: You're in direct criminal contempt of court.

MR. SLAW: Your Honor.

THE DEFENDANT: F[***].

THE COURT: You are again in direct criminal contempt of court.

Did you catch that last word?

THE COURT REPORTER: F[***].

The COURT: Yes."

¶ 5    The court called a short recess so that defense counsel could confer with defendant, after which defendant could allocute.  When the court reconvened, the proceeding continued:

"[THE COURT:] Mr. Rosario, I've held you in direct criminal contempt of court for your actions on two occasions.  The first occasion was because you would not obey my orders and be quiet and you continued to talk over me.  The second one was for the language you used as you were exiting here.

I will allow you to address the Court appropriately if you so decide before I decide what sentence I'm going to give you in relation to these two charges of direct criminal contempt of court.  Do you wish to address the Court?

THE DEFENDANT: Yes. I do.

* * *

You're misstating facts from your thing.  I'm calling my lawyer over here as you directed me to back in August.  If I have things I would like to add or put in my lawyer's

head, I should be able to do that. You're telling me to be quiet. I got a mask on. He's way up here with social distancing with this scamdemic or whatever you guys are calling this now. How can I get his attention without being disruptive so-to-speak and interjecting like no, this is what he needs to say back when it comes time. Then you go out of your way to silence me for whatever reason all the time it seems. It seems. Now whether that's true or not, I don't know. But it just seems that you haven't been impartial. That's how I feel but that's just me.

So, how do I get to my lawyer when you're misstating facts or alleged facts? How do I do that?"

¶ 6    Defense counsel told the court that, to enable a client to communicate without interrupting the court, he would let the client write out questions on a pad. However, he could not do so here, as defendant was in shackles. The court responded in part:

"I don't have a problem with him discussing things with his attorney. I have problem with when I am on the record that the conversation is so loud that my court reporter cannot hear me adequately ***. And, when I say please be quiet, I expect to be listened to and we can deal with it later.

As to the first contempt proceeding, I will take that as there was a misunderstanding. I will not sentence him on that.

As to the language he used when he was leaving the courtroom, I will sentence him to six months in the county jail which will be served after the period of this case, whether that is a finding of guilt and a DOC sentence or whether that's a finding of not guilty, he will then start serving his six months."

¶ 7     Defense counsel told the court that he had not heard the comment that drew the second finding of contempt. The court responded in part, "As he was leaving here, he said the word f[***] directly to me. *** That's why he's doing six months."

¶ 8     Defendant timely appealed the conviction and sentence.

¶ 9                                  II. ANALYSIS

¶ 10    On appeal, defendant contends that we must reverse his contempt conviction—based on a single utterance—because that utterance did not meet the accepted definition of criminal contempt of court. For the following reasons, we disagree.

¶ 11    Criminal contempt is "conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute." (Internal quotation marks omitted.) *People v. Simac*, 161 Ill. 2d 297, 305 (1994). Direct criminal contempt may be found and punished summarily because all of the elements of a valid conviction are before the court and thus come within its own immediate knowledge. *Id.* at 306. Before citing one with contempt, the court must find that the alleged contemnor's conduct was willful. *Id.* at 307. However, willfulness may be inferred from the allegedly contemptuous conduct itself. *Id.* Contempt must be proved beyond a reasonable doubt. *People v. Griffith*, 247 Ill. App. 3d 21, 23 (1993). On appeal, the issue is whether there was sufficient evidence to support the finding of contempt and whether the judge considered facts outside of the judge's personal knowledge. *Simac,* 161 Ill. 2d at 306.

¶ 12    Defendant argues that his single "f-bomb" was not direct criminal contempt, as it did not hinder or obstruct the court in its conduct of the hearing. Moreover, he neither intended to derogate the court's authority or dignity nor did his utterance produce such a result.

¶ 13    Defendant relies (solely) on *People v. Hanna*, 37 Ill. App. 3d 98 (1976).  There, the *pro se* defendant made an oral motion for an order of habeas corpus *ad testificandum* for two prisoners he wished to call as witnesses.  While arguing the motion outside the jury's presence but before courtroom spectators, he was, according to the trial court's findings, " 'at times loud and boisterous.' " *Id.* at 98-99.  He interrupted the State's objection to the motion and, "[a]fter a long and rambling statement," (*id.* at 99), remarked:

> " 'The way things are going now my side ain't ever going to be heard—uh—but I'm going
> to get it—I'm going to get it on the record.  I'm going to make a record, because I know
> what happened. *This Court has messed up so much already it's pathetic*.' "  (Emphasis in
> original.)  *Id.* at 99.

The trial court found the defendant in direct criminal contempt and sentenced him to 5 months and 20 days in prison.  *Id.* at 98.

¶ 14    The appellate court, over a dissent, reversed the conviction.  The court relied on *In re Little*, 404 U.S. 553 (1972).  In *Little,* the United States Supreme Court reversed a state trial court that had found the *pro se* criminal defendant in direct criminal contempt because, in his closing argument, he asserted that the court was biased and that he was a political prisoner.  *Id.* at 554.  The Court noted that the trial court had denied the defendant a continuance to obtain counsel.  Therefore, as the trial court had forced defendant to argue his case, he was "clearly entitled to as much latitude in conducting his own defense as we have held is enjoyed by counsel vigorously espousing a client's cause." *Id.* at 555.  The Court noted that it had previously held that attorneys could not be held in contempt for moving for the trial judge to recuse himself because he had intimidated and harassed the attorneys' client. *Id.* (citing *Holt v. Virginia*, 381 U.S. 131, 136 (1965)).  Thus, as there was no evidence that the defendant in *Little* had made his substantive

arguments for acquittal in a boisterous manner or actually disrupted the proceedings in any way, the displeasure that he might have caused the trial judge was not a valid basis for a contempt conviction. *Id.*

¶ 15 *Hanna* applied *Little* to a very similar set of facts. The *Hanna* defendant was representing himself. His claim that the court was biased and inept was part of a substantive argument for acquittal. There was nothing boisterous or disruptive in his remarks that the trial court held to be contemptuous. Therefore, the conviction was reversed. *Hanna*, 37 Ill. App. 3d at 99.

¶ 16 We do not see *Hanna* as helpful to defendant. Relying on the reasoning of *Little* and *Holt*, *Hanna* was premised on the concern that the contempt power might chill legitimate argument on the merits of a case and thus infringe on a litigant's right to vigorous representation, whether by himself or by counsel. Here, however, defendant's remark had nothing to do with his right to his day in court. Defendant, represented by counsel, was not held in contempt for making a substantive argument about the court's fairness in resolving a legal issue. Rather, as he was escorted from the courtroom, he directed a legally empty curse word at the trial judge. His gratuitous profanity served no legitimate purpose in the proceedings and was purely a sign of disrespect for the court and the proceedings.

¶ 17 In *People v. Roberts*, 42 Ill. App. 3d 604, 605 (1976), a case that neither party cites, a criminal defense attorney was held in direct criminal contempt based on findings that (1) as the prosecutor argued an objection at a sidebar, he "twice expelled air from his lungs in a 'loud' manner" and (2) after the court overruled his objection, he slapped the defense table and shouted, " 'How come everything he (the prosecutor) does is all right and everything I do is wrong?' "

¶ 18 The appellate court affirmed the finding of contempt. Following *Little* and *Holt*, the court recognized that, "in order to enable counsel to fully represent clients," courts must "protect[ ]

counsel in their use of words even though the language may be insulting to the court or opposing counsel." *Id*. at 607. However, the contemnor's loudly expelling air from his lungs and slapping the table while angrily shouting involved "more than merely making a statement. Each constituted loud and boisterous conduct." *Id*. Moreover, considering his previous admonishments for misconduct, "his continuation of improper activity derogated from the authority and dignity of the court." *Id.*

¶ 19    *Roberts* holds that a party can be held in contempt for gratuitously disrespectful or disruptive remarks even while engaged in substantive arguments. With even stronger reason, when a person, such as defendant here, is not engaged in legal argument but simply insults the judge to his face, *Roberts* supports a finding of contempt.

¶ 20    In *People v. Smith*, 377 Ill. App. 3d 458 (2007), 377 Ill. App. 3d 458 (2007), cited by the State, the *pro se* defendant told the judge at the sentencing hearing, "Your Honor, could you just sentence me so I could get the f*** up out of your face?" *Id*. at 460. The trial court found him in contempt and sentenced him to six months' prison. On appeal, he contended that his remark was "a single, isolated comment that did not embarrass, hinder, or obstruct the administration of justice." *Id*. at 462. Defendant here echoes that argument.

¶ 21    The appellate court disagreed and affirmed the contempt conviction. The court noted that the defendant had interrupted the trial judge while he was speaking and "use[d] profane language in front of the court. [The] interruption of the judge hindered the court in its administration of justice, and the use of profanity derogated from the dignity of the court." *Id*. The appellate court distinguished *Hanna* because the *pro se* defendant there had used no profanity.[1] *Id*. at 463.

---

[1]We add that *Hanna* is distinguishable also because the remarks there involved at least the gist of a serious argument on the merits of the *pro se* defendant's case.

¶ 22 We agree with *Smith*'s holding that the defendant's use of profanity to the judge's face allowed findings that the defendant committed a punishable act and that he did so with the intent required for a conviction. We note that this holding is in accord with both common sense and other authorities that have affirmed contempt convictions based on profanity addressed to the judge. See, *e.g.*, *In re Sealed Case*, 627 F.3d 1235, 1236 (D.C. Cir. 2010) (after judge imposed sentence, defendant exclaimed, " 'F[***], y'all' "); *In re Marshall*, 371 F.3d 42, 45 (2d Cir. 2004) (at sentencing, defendant told judge, " 'So all I can say is kiss my ass and your wife can suck my dick' "); *Higgins v. Liston*, 870 A.2d 1137, 1140, 1146 (Conn. App. Ct. 2005) (contemnor's statement to court, " 'F[***] you,' " was contempt because, in part, it "imposed an indignity on the authority of the court"); *In re Lamontagne*, 228 A.3d 631, 632 (R.I. 2020) (defendant's statement that his severe sentence was " 'bullshit' " could be punished as contempt "to prevent demoralization of the court's authority" (internal quotation marks omitted)).

¶ 23 The trial court correctly found defendant in contempt for intentionally and gratuitously directing profanity at the trial judge.

¶ 24                              III. CONCLUSION

¶ 25 For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 26 Affirmed.