IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

DANIEL COMMANS, *Plaintiff/Appellant*,

*v.*

HONORABLE JUDGE PETER M. DUNBAR, HONORABLE JUDGE
MITCHELL KALAULI, LAKE HAVASU MUNICIPAL COURT,
*Defendants/Appellees.*

No. 1 CA-CV 25-0256

FILED 02-06-2026

---

Appeal from the Superior Court in Mohave County
No. S8015CV202402332
The Honorable Steven C. Moss, Judge

**REVERSED**

---

COUNSEL

Whitney Whitney Baldridge Atkinson, Kingman
By Bryan R. Whitney, Christopher Stafford
*Counsel for Plaintiff/Appellant*

Doyle Hernandez Millam, Phoenix
By William H. Doyle, Carlos A. Hernandez, Emily S. Morgan
*Counsel for Defendant/Appellee*

---

**OPINION**

---

Judge Jennifer M. Perkins delivered the opinion of the Court, in which Judge Kent E. Cattani joined. Presiding Vice Chief Judge David D. Weinzweig concurred in part and dissented in part.

---

**P E R K I N S**, Judge:

¶1        Daniel Commans appeals his conviction and punishment for contempt of court for providing a vulgar email address with a coded insult to the prosecutor during a virtual court hearing. We reverse because Commans' behavior in providing the email address, though sophomoric, did not warrant a contempt finding, much less 180 days in jail.

## FACTS AND PROCEDURAL BACKGROUND

¶2        On August 29, 2024, the Lake Havasu Municipal Court held an arraignment hearing for Commans on misdemeanor charges for resisting arrest and criminal trespass. Commans attended virtually and was not represented by counsel. At the outset of the hearing, the judge asked Commans to provide an email address. Commans provided two email addresses, stating that he had trouble getting emails in the past. He spelled out the second one: "Y-A-E-G-R-S-U-X-C-O-X-6-9-6-9-6-9@gmail.com." To confirm, the judge read it back letter by letter.

¶3        Neither the judge nor the prosecutor, Charles Yaeger, reacted to the email address on the record, and the hearing proceeded uninterrupted. The court appointed an attorney to represent Commans and continued the arraignment to September 12, 2024. Later that day, the court issued a written order notifying Commans that, at the September 12 hearing, he would have to "show cause why [he] should not be held in contempt of Court for providing the . . . email address."

¶4        At the September 12 hearing, Commans accepted a plea deal resulting in a sentence of 180 days in jail on the misdemeanor charges. The court then stated it had already found Commans in "direct contempt," so only sentencing was at issue. His attorney argued the punishment should be mitigated because the email address was protected speech under the First Amendment to the United States Constitution. Commans himself asserted it was a real email address. The court imposed the maximum

allowable punishment of 180 days for contempt to run consecutive to any other jail time. In doing so, the court stated: "[T]here is free speech. The Court is a little bit different. You don't get to say anything you want. This was vulgar. It was directed at an officer of the Court clearly designed for that purpose."

¶5        Commans petitioned the superior court for special action relief, arguing that he was not afforded an opportunity to present evidence and that the contempt order improperly restricted protected speech. After a hearing, the superior court affirmed the contempt conviction. The superior court concluded that Commans had received adequate due process because summary disposition is appropriate for a direct contempt committed in the court's presence. And the superior court concluded that the email address was not protected speech, but rather unprotected "fighting words." Commans appealed from the superior court's order. The superior court stayed the execution of Commans' contempt punishment until the resolution of this appeal. We have jurisdiction over Commans' appeal from the superior court's denial of special action relief under Arizona Revised Statutes Section 12-2101(A)(1). *See Bridgeman v. Certa*, 251 Ariz. 471, 474–77, ¶¶ 7–14 (App. 2021).

## DISCUSSION

¶6        Commans argues that the First Amendment protected his speech, and that the superior court erred by determining that his speech constituted unprotected "fighting words." *See Citizen Publ'g Co. v. Miller*, 210 Ariz. 513, 519, ¶ 24 (2005) (speech is unprotected when it amounts to personally abusive epithets "likely to provoke [a] violent reaction" from its addressee, generally limited to face-to-face interactions).

¶7        We agree with Commans that his speech did not constitute "fighting words." There was no indication that Commans' words provoked or were likely to provoke a violent reaction from people listening to the virtual hearing. His speech remained subject to First Amendment protections.

¶8        But Commans was not entitled to use vulgarity without repercussion in a courtroom setting. *See Zal v. Steppe*, 968 F.2d 924, 929 (9th Cir. 1992) ("[T]he trial judge is charged with preserving the decorum that permits a reasoned resolution of issues. Zealous counsel cannot flout that authority behind the shield of the First Amendment."). Thus, the court did not violate the First Amendment. Regardless, the municipal court judge abused his discretion by holding Commans in contempt because (1)

3

Commans' conduct under these circumstances did not justify it, and (2) the court did not provide him an opportunity to challenge the holding. Although Commans has not raised these errors on appeal, "we will not ignore [fundamental error] when we find it." *State v. Fernandez*, 216 Ariz. 545, 554, ¶ 32 (App. 2007).

## I. Commans' conduct did not constitute contempt under Arizona law

**¶9**          By rule, an Arizona court may hold a person in criminal contempt if that person:

> (a) willfully disobeys a lawful writ, process, order, or judgment of a court by doing or not doing an act or thing forbidden or required; or

> (b) willfully engages in any other unreasonable conduct that obstructs the administration of justice or lessens the court's dignity and authority.

Ariz. R. Crim. P. 35.1; *see also* A.R.S. § 12-864 (contempt not specifically enumerated in criminal statutes may be punished in conformity with practice and common law).

**¶10**          Here, the court never told Commans not to give or repeat the email address he provided. So he did not willfully disobey a court order. The email address drew no attention until after the hearing and thus could not have obstructed the administration of justice. Accordingly, the relevant inquiry is whether, under Rule 35.1(b), Commans "willfully engage[d] in any other unreasonable conduct that . . . lessen[ed] the court's dignity and authority." And we consider the totality of the circumstances to determine whether Commans' conduct warranted a contempt holding under that part of Rule 35.1(b).

**¶11**          Two cases provide helpful guidance. In *In re Little*, 404 U.S. 553, 554 (1972), the United States Supreme Court invalidated a contempt order imposed on a criminal defendant for stating during trial that "the court was biased, [] had prejudged the case[,] and that [the criminal defendant] was a political prisoner." The contempt order was governed by a statute that made any behavior "directly tending to interrupt [the court's] proceedings, or to *impair the respect due to its authority*" punishable for contempt. *Id.* at 555 n.1 (emphasis added). The Supreme Court observed that vehement language alone does not confer "the power to punish for contempt," and it invalidated the contempt order because the defendant had not "disobeyed any valid court order, talked loudly, acted boisterously,

or attempted to prevent the judge or any other officer of the court from carrying on his court duties." *Id.* at 555–56.

¶12        In *Hirschfeld v. Superior Ct.*, 184 Ariz. 208 (App. 1995), the superior court held in contempt an attorney representing a father in a custody matter. The attorney had physically harassed the mother by following her around the judge's chambers while demanding to know the child's whereabouts in an abusive manner. *Id.* at 209–10. This Court affirmed, concluding that harassing and intimidating litigants, witnesses, attorneys, and jurors in or near the courtroom lessens the dignity and authority of the court. *Id.* at 211–12. Citing *Little*, this Court warned, however, that the contempt power "should be used with caution," and should not "be pressed beyond reasonable limits." *Id.* at 215–16.

¶13        Here, Commans was not loud or boisterous—he calmly spelled out the email address. *See Little*, 404 U.S. at 555–56. Commans' conduct did not disrupt the proceeding—the vulgarity of the email address went unnoticed until after the hearing. He did not harass or intimidate anyone—the childish insult may have embarrassed the prosecutor, but it did not intimidate or harass him. *See Hirshfeld*, 184 Ariz. at 211–12. And Commans received no warning against using offensive or insulting language in the courtroom. If Commans had received such a warning, providing the vulgar email address would have constituted a more direct challenge to the court's authority and been a greater affront to the court's dignity and authority. The lack of a warning weighs against holding him in contempt.

¶14        The superior court affirmed the municipal court's contempt holding in part because Commans had "induced the court" to restate the email address. But the municipal court judge's personal involvement by repeating the email address could not serve as a basis for the contempt holding because a judge in that position must refer the matter to another judge to make such a decision. Ariz. R. Crim. P. 35.4(b) (a judge must recuse himself and transfer a contempt matter to another judge if based on conduct involving disrespect to the judge or conduct that the judge participated in).

¶15        In short, although the content of Commans' email address was inappropriate, he did not disrupt any proceeding, harass or intimidate anyone, or disregard any court directive. Even resolving all reasonable inferences against Commans, the totality of the circumstances here did not justify holding him in contempt, much less justify imposing a six-month jail sentence.

## II. Contempt by summary disposition under Rule 35.2 was inappropriate

¶16        The contempt ruling also failed to meet due process requirements. Unless there has been direct contempt that requires immediate correction, a finding of contempt under Rule 35.2 should never be entered without first giving the interested party an opportunity to be heard.

¶17        Direct contempt involves conduct that occurred in the court's presence; indirect contempt involves conduct that occurred outside of it. *Ong Hing v. Thurston*, 101 Ariz. 92, 98 (1966). Unlike indirect contempt, a court may hold a person in direct contempt summarily, but that authority should be used sparingly. *Id.* at 99. Courts may hold a person in contempt without notice or a hearing when "immediate punishment is essential to prevent demoralization of the court's authority," otherwise it violates principles of due process. *In re Oliver*, 333 U.S. 257, 275 (1948). Absent a "substantial interest in rapidly coercing compliance and restoring order," a defendant should receive notice and an opportunity to be heard. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 832 (1994); *see* Ariz. R. Crim. P. 35.3 (the court must allow a defendant "reasonable time to prepare a defense" to a contempt finding unless summary proceedings are appropriate); *see also Riley v. Superior Ct.*, 124 Ariz. 498, 499 (App. 1979) (vacating contempt finding because summary proceedings under Rule [35.2] were not warranted because "there was no need for immediate penal vindication of the dignity of the court" (cleaned up)).

¶18        Here, there was no need for immediate punishment because the vulgar email address was not noticed until after the hearing. Thus, the municipal court erred by finding Commans in contempt without first providing him an opportunity to be heard. This was structural error. *See State v. Ring*, 204 Ariz. 534, 552, ¶¶ 45–46 (2003) (denying a criminal defendant any opportunity to present a defense is structural error requiring reversal).

## CONCLUSION

¶19        The municipal court committed fundamental error by holding Commans in contempt. We reverse his contempt conviction.

**W E I N Z W E I G**, Vice Chief Judge, concur in part and dissent in part:

**¶20** I concur with the majority that the First Amendment offers no shelter here, *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 581 n.18 (1980) (plurality opinion) (time, place, and manner restrictions are appropriate in the courtroom), and that Commans was not afforded due process. For that reason, and because a reasonable judge might conclude that Commans engaged in contemptuous conduct, I would remand for the municipal court to afford due process.

**¶21** I write separately to air my Eighth Amendment concerns. The trial court's 180-day sentence was grossly disproportionate to the offense and violated the Eighth Amendment's prohibition on cruel and unusual punishment. *See* U.S. Const. amend. VIII.

**¶22** The Eighth Amendment prohibits "cruel and unusual punishments." *Id.* As relevant to noncapital cases, this includes "sentences that are grossly disproportionate to the crime committed." *State v. Kasic*, 228 Ariz. 228, 231, ¶ 13 (App. 2011). Punishment must be proportionate; a sanction should match the severity of misconduct. *See State v. Berger*, 212 Ariz. 473, 481, ¶ 39 (2006).

**¶23** Six months in jail for an offensive email address exceeds constitutional bounds. Trial courts have broad discretion to maintain decorum in their courtrooms, but that discretion has limits. A 180-day sentence transforms contempt power from a tool to maintain order into a cudgel for punishing disrespect.

**¶24** I would vacate the sentence on both due process and Eighth Amendment grounds and remand for the municipal court to afford due process.

