134 N.J. Super. 472 (1975)
341 A.2d 694
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HIRAM GONZALEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 20, 1975.
Decided June 18, 1975.
*473 Before Judges KOLOVSKY, LYNCH and ALLCORN.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. Lloyd N. Simon, Assistant Deputy Public Defender, of counsel and on the brief).
Mr. Wilbur H. Mathesius, Acting Prosecutor of Mercer County, attorney for respondent (Mr. Neil J. Casey, III, Assistant Prosecutor, of counsel and on the brief).
Ms. Susan W. Sciacca, Deputy Attorney General, submitted a brief as amicus curiae for the State of New Jersey (Mr. William F. Hyland, Attorney General, attorney).
The opinion of the court was delivered by LYNCH, J.A.D.
Defendant appeals from a conviction for receiving stolen property and from two convictions for contempt of court. He was sentenced to two consecutive six-month sentences on each of the contempt charges and to an indeterminate term at Yardville on the criminal charge, the latter sentence to be served consecutively to the contempt sentences.
*474 On appeal he first contends that, since the contempt sentences aggregate more than six months, he was entitled to a jury trial and the summary findings and imposition of sentences by the judge below were therefore illegal. Secondly, defendant contends that he was denied effective assistance of counsel by the failure of his defense counsel to assist him during the contempt citations. Lastly, he contends that the sentences were manifestly excessive, unduly punitive and an abuse of the sentencing court's discretion.
On September 9, 1974 defendant entered a plea of guilty to a charge of receiving stolen property, which plea was accepted by the trial judge once the factual basis therefor had been established. The alleged contempts occurred during a subsequent sentencing proceeding. Defendant asked the judge that he be placed "in some kind of program," rather than being confined to Yardville. He claimed that it had been his understanding that by pleading guilty he would be placed on probation. The judge nevertheless sentenced defendant to an indeterminate term at Yardville. When the judge advised defendant that he had a right to appeal, defendant uttered certain vulgarities concerning "all" involved but particularly concerning his defense counsel. The judge immediately held him in contempt of court for his actions and sentenced him to the Mercer County Workhouse for a period of six months. Defendant then directed additional scurrilous remarks to the court, to which the judge responded: "That is another contempt. You are sentenced to the Workhouse for a period of an additional six months." Defendant continued to direct obscenities and implied threats to the court, and the matter was concluded.
On this appeal the acting prosecutor filed a brief in which it was conceded that the imposition of the sentences totalling more than six months was in error. Thereafter, the Attorney General of New Jersey filed another brief which, contrary to the prosecutor's position, contended that the separate six-month sentences were not improper. Since *475 two briefs had been filed on behalf of the State, the Attorney General requested that his brief be withdrawn, unless this court deemed it appropriate that it be considered on an amicus curiae basis. We conclude that the latter is the appropriate procedure and it is ordered that the Attorney General's brief be accepted as that of amicus curiae.
There is no question that a defendant may be convicted for contempt of court for disrupting proceedings by the use of improper language directed to the court or to an attorney. Mayberry v. Pennsylvania, 400 U.S. 455, 466, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971); State v. Fisher, 115 N.J. Super. 373, 377 (App. Div. 1971).
In In re Callan, 122 N.J. Super. 479 (Ch. Div.), aff'd 126 N.J. Super. 103 (App. Div. 1973), rev'd on other grounds 66 N.J. 401 (1975), it was said:
A contempt is a disobedience of the court by acting in opposition to its authority, justice and dignity. It comprehends any act which is calculated to or tends to embarrass, hinder, impede, frustrate or obstruct the court in the administration of justice, or which is calculated to or has the effect of lessening its authority or its dignity; or which interferes with or prejudices parties during the course of litigation, or which otherwise tends to bring the authority and administration of the law into disrepute or disregard. In short, any conduct is contemptible which bespeaks of scorn or disdain for a court or its authority. In re Bozorth, 38 N.J. Super. 184, 188 (Ch. Div. 1955); In re Clawans, 69 N.J. Super. 373 (App. Div. 1961), cert. den. 36 N.J. 296 (1962); 17 Am. Jur.2d, Contempt, § 3 at 6 (1964); 17 C.J.S. Contempt § 2 at 5, § 25 at 66 (1963). [at 494].
Moreover, it has been held that a court may summarily convict and impose punishment for contempt, without any provision for notice or an opportunity to be heard, provided that the contemptuous conduct occurred in the immediate presence of the judge and was personally witnessed by him, and that the conduct created "an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public" that if "not instantly suppressed and punished, demoralization of the court's authority would follow." Cooke v. United States, *476 267 U.S. 517, 536, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925); In re Oliver, 333 U.S. 257, 275, 68 S.Ct. 499, 92 L.Ed. 682 (1947); see also Taylor v. Hayes, 418 U.S. 488, 497, 94 S.Ct. 2697, 2702, 41 L.Ed.2d 897, 907 (1974); Groppi v. Leslie, 404 U.S. 496, 503-504, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972); Mayberry v. Pennsylvania, supra, 400 U.S. at 463, 91 S.Ct. 499 (1971); Ex Parte Terry, 128 U.S. 289, 308-310, 9 S.Ct. 77, 52 L.Ed. 405 (1888).
In addressing itself to the power of a judge to deal summarily with contumacious conduct in his courtroom, the United States Supreme Court recently said in Codispoti v. Pennsylvania, 418 U.S. 506, 513-514, 94 S.Ct. 2687, 2692-2693, 41 L.Ed.2d 912, 920-921 (1974):
There are recurring situations where the trial judge, to maintain order in the courtroom and the integrity of the trial process in the face of an "actual obstruction of justice," In re McConnell, 370 U.S. 230, 236, 82 S.Ct. 1288, 1292, 8 L.Ed.2d 434, (1962); see also In re Little, 404 U.S. 553, 555, 92 S.Ct. 659, 660, 30 L.Ed.2d 708, (1972), convicts and sentences the accused or the attorneys for either side for various acts of contempt as they occur. Undoubtedly, where the necessity of circumstances warrants, a contemnor may be summarily tried for an act of contempt during trial and punished by a term of no more than six months. Nor does the judge exhaust his power to convict and punish summarily whenever the punishment imposed for separate contemptuous acts during trial equals or exceeds six months. Cf. United States v. Seale, 461 F.2d 345, 355 (CA 7 1972).
Bloom v. Illinois, supra, recognized, as cases in this Court have consistently done, "the need to maintain order and a deliberative atmosphere in the courtroom. The power to quell disturbance cannot attend upon the impaneling of a jury." 391 U.S., at 210, 88 S.Ct. 1477, at 1486. [20 L.Ed.2d 522].
"[A] criminal trial, in the constitutional sense, cannot take place where the courtroom is a bedlam. * * * A courtroom is a hallowed placed where trials must proceed with dignity. * * *" Illinois v. Allen, 397 U.S. 337, 351, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353 (1970) (Douglas, J., separate opinion); see also Disorder in the Court: Report of the Association of the Bar of the City of New York, Special Committee on Courtroom Conduct 10-23 (1973); Burger, The Necessity for Civility, 52 F.R.D. 211, 214-215 (1971).
"To allow the disruptive activities of a defendant * * * to prevent his trial is to allow him to profit from his own wrong. The *477 Constitution would protect none of us if it prevented the courts from acting to preserve the process that the Constitution itself prescribes." Illinois v. Allen, supra, 397 U.S., at 350, 90 S.Ct. [1057] at 1064. [25 L.Ed.2d 353] (Brennan, J., concurring).
More recently, in Mayberry v. Pennsylvania, supra, we again noted that a judge, when faced with the kind of conduct there at issue, "could, with propriety, have instantly acted, holding petitioner in contempt * * *." 400 U.S., at 463, 91 S.Ct. [499], at 504 [27 L.Ed.2d 532]. That the total punishment meted out during trial exceeds six months in jail or prison would not invalidate any of the convictions or sentences, for each contempt has been dealt with as a discrete and separate matter at a different point during the trial.
We are satisfied here that defendant's convictions for contempt rest upon separate incidents, though occurring over a short period of time. Upon the pronouncement of the first six-month sentence it may well have been anticipated, or at least hoped, that defendant would not again offend. But he continued to express his scorn for the court in vulgar terms. The second contempt conviction and sentence were entirely appropriate under the circumstances, and there was no denial of defendant's right to a trial by jury.
We recognize that defendant's actions here did not occur during "trial," as in Codispoti v. Pennsylvania, supra, but rather during sentencing. That is a distinction without a difference. All the conditions which justify summary convictions for contempt during a trial were present here. Defendant's contemptuous conduct occurred in open court and was directly witnessed by the judge. Immediate treatment was necessary to preserve order and a deliberate atmosphere in the courtroom.
We find no merit in defendant's claim of ineffective assistance of counsel. R. 2:11-3(e)(2).
And finally, there was no abuse of discretion in the consecutive sentences imposed for the separate contempts committed and for receiving stolen property. The convictions and sentences are affirmed.