**CASAS OFFICE MACHINES, INC., Plaintiff,**

v.

**MITA COPYSTAR MACHINES, INC., et al., Defendants.**

**Civ. No. 91–1292 GG.**

United States District Court, D. Puerto Rico.

Nov. 18, 1993.

---

Luis A. Melendez Albizu, Sanchez, Betances & Sifre, San Juan, PR, for plaintiff.

Fiddler, Gonzalez & Rodriguez, San Juan, PR, Jose A. Leon Landrau, Caguas, PR, Nilda Cordero De Gomez, Hato Rey, PR, for defendants.

## OPINION AND ORDER

GIERBOLINI, Chief Judge.

█ The above-captioned case is rife with acrimonious disagreement due to the fact that the attorneys involved are comporting like badly-behaved small children. Given such behavior, an appropriate sanction such as a spanking used to be administered; however, as the federal courts are courts of limited jurisdiction we are circumscribed in terms of the actions we can take. The self-serving and somewhat childish pranks of the lawyers, especially that of plaintiff's counsel, burden this court, serve justice poorly and the clients worse. If the attorneys could only multiply loaves and fishes as well as they multiply paper, the world hunger crisis would be over, and a new era of worldly abundance upon us. Alas, the only abundance presently upon us is one of papers. The forests of the world would weep if only they knew that their destiny lay in providing the fodder for the litigation that is this case! But lawyers beware: we still have Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927.

The court is currently faced with Mita's Objections to the Report and Recommendation of the Magistrate, Objections which we find unconvincing. We therefore ADOPT the recommendations of the magistrate without exception.

**Mita's Objections to the Report and Recommendation of the Magistrate.**

*I. Background*

On September 2, 1993, Magistrate Judge Justo Arenas filed his Report 'and Recommendation in the above-captioned case and recommended that Mita's Motions to Dismiss (Docket No. 79) and for Summary Judgment

(Docket No. 17) be denied, and that plaintiff Casas' Cross–Motion for Partial Summary Judgment (Docket No. 27) be granted.

Mita has objected to the Report of the Magistrate, and has also moved that new evidence by considered by this court in its review of the magistrate's decision. Casas has responded to Mita's objections. Under Local Rule 510.2, the Objection is deemed fully submitted.

One would think that, by the name-calling invoked by both sides, that the instant action involved the massacre of innocent children as opposed to the run-of-the-mill business dispute which it is.

Defendant Mita Copystar America, Inc. ("Mita") is a manufacturer of office and photocopying machines. Plaintiff Casas Office Machines, Inc. ("Casas") is a Puerto Rican corporation which, in 1983, signed a contract with Mita to distribute Mita products in Puerto Rico. An earlier commercial dispute between the parties was the subject of state court proceedings in 1988 which were settled.

In 1989, Mita and Casas executed a second Agreement ("1989 Agreement") which granted to Casas exclusive rights to distribute Mita products in the Greater San Juan area. A clause of the 1989 Agreement established that Casas' failure to meet or exceed 85% of a set sales quota would result in termination of the exclusivity provisions of the contract.

Casas did not meet the quota and therefore Mita notified Casas that, pursuant to the contract, its exclusivity provision was terminated. Caguas Copy, Inc., and Oficentro J.P. Inc. were therefore designated as new distributors for the Greater San Juan area. In response Casas sued Mita in state court.

Casas action was removed to this court. Casas claims that (1) Mita's actions constitute an impairment of the exclusivity provision without just cause in violation of Law 75, P.R.Laws Ann. tit. 10, § 278a (1966); (2) Mita and the new distributors have conspired to harm and deprive plaintiff of its right to sell Mita products; and (3) that the distribution contracts between Mita and the new distributors are null and void for illicit consideration since they are contracts executed to damage Casas.

Casas requests pecuniary redress for damages incurred as a result of Mita's impairment of the exclusivity provisions. Casas also seeks a permanent injunction enjoining Mita from impairing the exclusivity provision of the 1989 contract and from designating new distributors. In addition, Casas seeks declaratory relief that Mita lacks just cause to impair the contract and that the new contracts with the distributors are null and void.

Mita filed two dispositive motions. The first, for summary judgment argued that Mita did not impair the exclusivity provision since said clause was conditioned explicitly on a quota proviso that was not fulfilled by Casas, that there was just cause for impairing the contract, and that Casas is barred by the equitable doctrine of laches from suing. Mita also has moved to dismiss the case alleging that Casas has engaged in fraud on the court. The magistrate recommended that both of these motions be denied.

Casas cross-moved for summary judgment to impose partial judgment against Mita on the Law 75 claim. This motion was granted by the magistrate.

Mita has objected. It has also requested to submit to the reviewing court evidence not before the Magistrate when he made his Report and Recommendation. We find no mistakes of law or fact in the magistrate's recommendation. For the reasons below, Mita's objections are found to be unsupported, its attempts to submit new evidence will not be allowed, and the recommendation of the magistrate is hereby adopted.

## II. Motion to Dismiss for Fraud on the Court

Mita charged that Casas is guilty of fraud on the court for altering two documents to attempt to prove that its pre–1989 relationship with Mita was one of exclusive distribution. The magistrate denied Mita's motion to dismiss based on this charge.

Fraud on the court "requires that a litigant and his lawyer concoct some unconscionable scheme calculated to impair the court's ability fairly and impartially to adju-

dicate a dispute." *Sandstrom v. Chemlawn Corp.*, 904 F.2d 83, 88 (1st Cir.1990). The party seeking dismissal on these grounds must prove that a party has set this unconscionable scheme in motion with specific intent to improperly influence the trier of fact, and must document the existence of such a scheme by clear and convincing evidence. *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir.1989). The magistrate found that Mita failed to prove the existence of such a scheme. (See Report and Recommendation, 5).

■ In Mita's objection to this finding, it merely stated that it "incorporates and restates by reference all of the arguments contained in its Memorandum of Law in Support of Motion to Dismiss filed on June 4, 1993, and its Reply to Casas' Opposition to Mita's Motion to Dismiss filed on July 29, 1992." (Mita's Objection, 20). This "objection" fails to rise to the standard necessary for an objection.

28 U.S.C. § 636(b)(1)(C) provides that a "judge of the district court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." However, no review is required of any issue that is not the subject of objection. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *U.S. v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986).

■ Mita has failed to preserve its objection. It is obvious, given the phenomenal amounts of paper brandished in this case, that Mita's mere recitation of the existence of previous submissions does not suffice to amount to a specific objection. Essentially, Mita is telling this court, "We object, but we do not feel like telling you why. Go look at other things we said before." They cannot seriously expect this court to take that as an objection which deserves respect. A comment or written statement submitted *before* the issuance of a Magistrate's Report and Recommendation cannot constitute an objection to that same Report.

Failure to file specific objections amounts to a waiver of the right to review. See *Fenner v. Moran*, 772 F.Supp. 59, 63 (D.R.I. 1991). Mita's "objection" to the denial of its motion to dismiss amounts merely to a general objection, and is insufficient. See also Local Rule 311.2, .4.

■ Additionally, this court finds ample evidence in the record to support the magistrate's conclusion. Even had Mita made a specific objection, we would have rejected it, for the same reasons that the magistrate cited in his denial of the motion to dismiss. Mita has failed to submit sufficient evidence to show, by the clear and convincing standard, that there was a fraud, or that this alleged fraud, if it existed, was conscious and sentient. After reviewing the documents alluded to in Mita's "objection" we come to the same conclusion: Mita fails to prove fraud on the court. If there is any fraud in this case, it is the lawyers' fraud on the clients, not the court, for their overwhelmingly vituperous, redundant, and excessive submissions.[1] In any event, this lawsuit is concerned with the facts, circumstances, and effects of the 1989 Agreement and the exclusivity provisions therein, not with the 1983 Agreement. Therefore, we agree with the magistrate that the claimed alteration lacks substantial relevance to the 1989 Agreement which is the crux of the instant lawsuit. We therefore DENY Mita's motion to dismiss based on allegations of fraud on the court.

### III. Motions for Summary Judgment

The decision whether or not to grant summary judgment rests on a determination as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Summary judgment is an appropriate remedy "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

1. The court takes notice of the general recession, but also notes that economic hardship is no excuse for the immoderate generation of fees by lawyers.

party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Not all conflicts of fact will bar summary judgment: "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, the requirement is that there is no *genuine* issue of *material* fact." *Liberty Lobby,* 477 U.S. at 247, 248, 106 S.Ct. at 2510 (emphasis in original); *see also Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 7–8 (1st Cir.1990). For a dispute to be "genuine" its presence must be sufficient that the trier of fact could resolve it in favor of the party opposing the motion. *Nereida–González v. Tiradò–Delgado,* 990 F.2d 701, 703 (1st Cir.1993). "A factual dispute is material if it affects the outcome of the litigation, and genuine if manifested by substantial evidence going beyond the allegations of the complaint". *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir. 1989), citing *Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.,* 718 F.2d 1201, 1204 (1st Cir.1983).

The nonmoving party bears the burden of production of showing that summary judgment is not appropriate by coming forward with specific facts showing that there is a genuine issue for trial; it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 587, 106 S.Ct. 1348, 1355, 1356, 89 L.Ed.2d 538 (1986); *R.J. Reynolds,* 896 F.2d at 8.

In deciding whether summary judgment is proper, the court must view the record in the light most favorable to the party opposing such motion. A nonmoving party's evidence cannot be merely colorable, but must be suf-

ficiently probative to show differing versions of the facts which justify a trial. "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *R.J. Reynolds,* 896 F.2d at 8, 10; *see also Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 109–110 (1st Cir.1988).

While the initial burden rests upon the moving party, once the moving party avers an absence of material facts that might support the claim of the party opposing the motion, the opponent must, *where he bears the ultimate burden of proof at trial,* present definite and competent evidence sufficient to rebut the motion. *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Fragoso v. López,* 991 F.2d 878, 886–87 (1st Cir.1993). When the nonmoving party fails to make a sufficient showing as to an element of its case upon which it bears the burden of proof, summary judgment is appropriate. *Celotex Corp.* 477 U.S. at 322–23, 106 S.Ct. at 2552.

## A. Laches

■ The magistrate recommended that Mita's motion for summary judgment on the ground of laches be denied, a recommendation which we adopt. The magistrate's reasoning that Mita has failed to demonstrate sufficient prejudice due to Casas' allegedly unjustified delay in filing its claim is manifestly correct. A close and careful review of the record demonstrates that, given the nature of the relations between the parties and the active participation in judicial processes by both sides, there is no undue prejudice to Mita. Mita clearly fails to carry its burden under the summary judgment standard of demonstrating that there are no sufficiently probative material facts that Casas can demonstrate to prevent its entry.[2]

---

2. Again, here Mita fails to make sufficient Objection. As noted above, it is not sufficient, in objecting to a Magistrate's report, to merely recite the stock phrase "Mita hereby incorporates and restates by reference the arguments and explanations presented in Mita's Motion for Summary Judgment and supplementary motions." See Mita's Objections, at 16. After all, why stop there? Why not say "we incorporate by refer- ence all arguments contained in briefs submitted by any parties that have presented especially good arguments before the district court in the last twelve years?" Mita must *object to the Report itself* in order to convince the reviewing court that the magistrate erred. This court is not obligated to guess which arguments, which passages of its briefs, which exhibits, to which Mita refers when it "incorporates by reference" other

Mita argues that laches should issue because Casas' delay in filing suit allegedly hampered Mita's ability to gather "the necessary economic data and documents for the relevant time period and territory for purposes of disproving Casas' allegations." (Mita's Objections, at 15). Since Mita is the party bearing the burden of proof in seeking the relief of laches, a mere allegation that data gathering was somehow unfairly hampered due to Casas' actions does not suffice absent even an allegation of how Mita's efforts were hindered, or which documents it was unable to procure.

Again, Mita appears satisfied to leave these questions up to the judicial imagination. Since the judicial imagination is limited to the facts placed before it by the parties seeking relief, given the paucity of proof before us by Mita we can not imagine a way in which Mita's efforts were unduly and unfairly hampered by any unexcusable delay on the part of Casas. If anything, it would seem that a greater time period would allow Mita time to procure more and better data. Rarely do parties claim, as Mita does here, that it was prejudiced by too much time to discover. We therefore adopt the magistrate's recommendation and DENY Mita's motion for summary judgment on the ground of laches.

*B. Breach of Contract and Injunctive Relief*

■ The above two motions are relatively easy to dispose of. It is the following motion that is truly at the core of Mita's objections.[3] The magistrate reported that Mita breached its contract with Casas by enforcing the quota provisions contained therein because Mita failed to sustain its burden of establishing that the quota involved was reasonable under Law 75.

The magistrate then found that in the circumstances prevailing at the time of Casas' nonperformance, the quota provision was unenforceable under the 1988 amendments to Law 75 since it lacked a "just cause" provision, and thereafter found that Mita's termi-

nation of Casas' exclusive distributorship was without just cause. He then recommended an injunction barring Mita from impairing the contract without just cause.

1. Mita objects to the legal conclusion of the magistrate that Section 278a–1(c) of Law 75 required Mita to prove that the quota was reasonable at time that Casas failed to meet it.

2. Mita also objects to the magistrate's conclusion that the 1989 quotas were unreasonable at the time of Casas' nonperformance of same and that Casas' failure cannot be attributed to the conditions of the photocopying market in Puerto Rico at the time of Casas' noncompliance.

3. At the very least, Mita contends that in any event Mita has adduced sufficient questions of material fact to preclude the entry of partial summary judgment against them.

We address Mita's objections seriatim.

**The Requirements of Law 75**

The magistrate correctly found that the 1988 Amendments to Law 75 requires Mita to prove that the quota provisions were reasonable at the time of Casas nonperformance. The 1989 Agreement contained an provision that conditioned Casas' exclusive distributorship in the Greater San Juan area on the achievement of at least 85% of a set quota. Mita could terminate Casas' distributorship completely if Casas failed to achieve 50% of the quota. When Casas failed to sustain the requisite sales, Mita contracted with other distributors, as has been noted.

Under Puerto Rican law, private parties are entitled to contract to any terms not contrary to the laws, moral or public order. P.R.Laws Ann. tit. 31, §§ 3372, 3421 (1930). Any contractual provision that conflicts with any existing law is thereby rendered null and void. Casas charges that the quota provision was unreasonable and null and void since it violates Puerto Rico's stringent protection of distributors.

---

documents. Mita will not be rewarded for its laziness by having the court do its work for it.

**3.** Indeed, it is the only recommendation to which Mita makes proper objection.

Under P.R.Ann. tit. 10 § 278a–1 an exclusive dealership relationship is illegally impaired when the principal contracts with new dealers in the same area in which it already has a contractual exclusive dealership arrangement. Even if the contract includes contrary termination clauses, the principal is forbidden to act in a way that impairs the contact except for just cause. Pursuant to the 1988 amendments to Law 75, the notion of "just cause" for terminating a dealership was regulated. P.R.Laws Ann. tit. 10. § 278a–1(c) (1988) now reads in its entirety:

> The violation or nonperformance by the dealer of any provision included in the dealer's contract fixing rules of conduct or distribution quotas or goals because it does not adjust to the realities of the Puerto Rican market at the time of the violation or nonperformance by the dealer shall not be deemed just cause. The burden of proof to show the reasonableness of the rule of conduct or of the quota or goal fixed shall rest on the principal or grantor.

Pursuant to this chapter, the burden of proof rests on Mita to demonstrate that the quota is reasonable. Since Casas' cross-motion for summary judgment alleged that Mita's quota was unreasonable, Mita must therefore adduce strong and competent evidence given its ultimate burden of proof at trial.

Mita's first objection is without any merit whatsoever. It is quite obvious from the express language of 278a–1(c) that reasonableness is to be ascertained "at the time of the violation or nonperformance by the dealer". Rarely is statutory language so clear. Additionally, Mita's objection to the magistrate's finding that 278a–1(c) mandated that Mita prove reasonableness at time of nonperformance is palpably deficient. The statement "Mita objects" is appears to be the total of Mita's argument on this point. (Mita's Objections, 3). Mita fails to understand that the mere repetition of its statement that 278a–1(c) means something other than what its express language signifies does not suffice to constitute argument. To say is not to argue. Arguments contain reasons,

logic, deductions and citations. Self-serving restatements of positions without supporting reasons cannot convince this court, and do not count as arguments acceptable in a court of law.

### Mita's Arguments of Reasonableness at Time of Nonperformance

■ The magistrate found, and we agree, that the quota provision was unreasonable at the time of Casas' nonperformance. In support of its claim that the quota was reasonable, Mita presented an unsworn declaration by Rafael Martinez Margarida, a certified public accountant (CPA). In this declaration the CPA asserted that his examination of the Puerto Rico External Trade's Statistics (PRETS) reflected a growing market for photocopying machine imports from the period of 1985 to 1990, inclusive. Thus, he concluded, Casas' failure to meet the quota could not be attributed to market conditions.

As the magistrate found, Casas proved that Mita's argument was based on erroneous statistics. Among the factors cited by the magistrate which we find most convincing, the CPA's report failed to take into account essential aspects of the Puerto Rican market such as the effects of Hurricane Hugo and the recession on the economy. The CPA's report also failed to take into account the effect of intrabrand rivalry on Casas's market share, a rivalry fostered by Mita's impairment of Casas' exclusive distributorship.

Additionally, Mita's data as to the market for copying machines in Puerto Rico erroneously included types of copying apparatus that were not machines manufactured by Mita and sold to Casas.[4] Thus, Mita's evidence exaggerated the size of the market by including within it devices such as thermocopying mechanisms, which were not among those apparatuses made and sold to Casas by Mita, and minimized market conditions by failing to include negative factors such as Hurricane Hugo, the recession, the intrabrand rivalry etc. Clearly, Mita's evidence fails to create a sufficient question to prevent

---

4. Casas would have this court believe that Mita's evidence was deliberately fabricated. Yet there is no convincing evidence to that effect, and thus the court will assume that Mita's evidence, although unpersuasive and nonprobative, was submitted in good faith.

the entry of summary judgment in Casas' favor since Mita has the burden of proving that the quota's were reasonable at the time of Casas' nonperformance, given the legal presumption that they were not unreasonable.

Thus, it was "unreliable, lacked probative value, and does not constitute competent evidence." (Magistrate's Report, p. 10). Mita claims now that its failure to submit more probative evidence was due to its lack of time in which to gather and present it. We find this excuse pathetic and unconvincing.

■ This case has been pending (perhaps "festering" is a better word) for quite some time. As Casas demonstrates, Mita had almost two years in which to submit evidence as to the reasonableness of the quota provisions. Mita's contention that it would have submitted better evidence had it been allowed to present a sur-reply is irrelevant. Evidently, Mita would have this court wait until *Mita* was convinced that the time for motions to be submitted was at an end. Mita forgets that litigation must be conducted according to rules, regulations, and time limits set by the court and the applicable rules of procedure, not by the litigants. Mita cannot excuse its failure to submit evidence within set time limits since it has not in any way demonstrated or even alleged that those time limits were unfair or unreasonable. The appropriate remedy for Mita's dereliction of its legal duty is a malpractice action against the lawyers, not a request that the court reopen the evidence.

■ As Casas notes, when objecting to a magistrate's report a party is to rely on the evidence submitted to the magistrate. The instant motions were deemed fully submitted a long time ago. New evidence will not be accepted. *Paterson–Leitch Co. v. Mass. Municipal Wholesale Elec. Co.*, 840 F.2d 985, 990–91 (1st Cir.1988); *Borden v. Secretary of Health and Human Services*, 836 F.2d 4, 6 (1st Cir.1987). It is absurd to argue, as Mita does, that a losing party, if he another chance, could present better evidence. Such a rule would prolong litigation indefinitely and needlessly. "Systemic efficiencies would be frustrated and the magistrate's role reduced to a mere dress rehearser if a party

were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round." *Paterson–Leitch*, 840 F.2d at 991.

Mita bears the burden of proof at trial to show that the quotas were reasonable at the time of nonperformance. L.P.R.A. 10 § 278a–1(c). Since the quotas are presumptively unreasonable, Mita must, in order to avoid summary judgment, submit evidence sufficiently probative on this point. Summary judgment is to be granted where the evidence presented in opposition rests solely, as it does here, "upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). Mita must present competent evidence. This it has failed to do.

### Mita's Objection to the Magistrate's Granting of an Injunction

■ The magistrate recommended that Mita be enjoined from impairing the contract by designating new distributors without just cause. Essentially, the magistrate recommends that Mita be ordered to adhere to the applicable law governing distributorships in Puerto Rico, Law 75. This is unexceptional. Since Law 75 exists to protect the interests of distributors from the termination of distribution agreements without just cause, see *Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 623 F.Supp. 912, 918 (D.P.R.1985), all the magistrate recommends is that the court advance this legislative intent via the grant of an injunction. We therefore adopt this recommendation.

Mita's claim that there exists genuine disputes as to material facts so as to preclude Casas' motion for summary judgment is unavailing. As the statute clearly notes, Mita has the burden of proving at trial the reasonableness of the quota at the time of nonperformance. Said quotas are presumptively unreasonable. The fact that Mita's evidence in opposition to this motion is unprobative and unconvincing provides reason enough for granting of the injunction, since Mita bears the ultimate burden of proof at trial. It is enough that Casas rebut Mita's proof, which

Casas has done, in order to obtain the preliminary injunction.

■ Mita's claim that the issuance of a permanent injunction constitutes involuntary servitude is unpersuasive. Mita would have this court believe that the magistrate recommends that Mita be bound to Casas for infinity, when the scope of the magistrate's rec. was far more limited. Mita is ORDERED not to impair the 1989 Agreement without just cause. As the magistrate stated, "I find that a permanent injunction may be granted to enjoin Mita from impairing the contract. However, it may not be issued to enjoin any of the parties from rescinding the contract [in good faith] in the future." (Magistrate's Report, p. 18) Mita has failed to show good faith just cause presently; this does not mean that in the future there may be a good faith presence for Mita to determine that there is just cause to so impair. If in the future the Puerto Rican market for copiers improves, yet Casas fails to sell even one copier, then clearly Mita would, in good faith, have just cause to impair the contract.

### IV. Further Order

■ In addition, the court is hereby ORDERING the attorneys for the parties to desist from wanton, unnecessarily vituperative and vexatious filings. The court has, of course, Rule 11 power to levy fines for such abuse of the court process.

The court declines to limit itself to monetary sanctions, however, because of a concern that mere monetary fines alone will fail to deter the attorneys. If the clients are being billed only for half of the hours wasted on this case by their lawyers, then the legal representatives are far too wealthy to be amply deterred or punished by monetary sanctions. By ORDERING the lawyers to refrain from filing unnecessary papers filled with personal attacks far removed from the merits of the case, the court is placing them on notice that failure to so obey will result in the levying of contempt of court charges for disregarding a court ORDER. What fines will not accomplish perhaps the fear of incarceration for contempt of court might.

This warning is directly especially at the attorneys responsible for Casas' Response to Mita's Objections of October 22, 1993, signed by Luis A. Melendez–Albizu. Rarely has this court witnessed such an obnoxious display as is evidenced in this brief. Mr. Melendez in particular is advised that this venomous and argumentative filing goes beyond the boundary of what is acceptable as pleading, and is immediately fined $250.00. He and the rest of the Casas legal team is ORDERED to desist such filings in the future and is further warned that further displays of childishness may be punished by the levying of criminal contempt of court and a stay in jail.

■ Furthermore, Casas is ORDERED to refrain from unnecessary adornments to the text of its briefs. Casas utilizes so many typographic emphases that a reasonable reader is left bewildered. Some statements are in bold. Others are underlined. Some are in bold and underlined. Some are even set in enlarged type, utilizing different fonts, and then emphasized in bold print and underlined. The court understands that the advent of the computer age has changed the legal field and the way that briefs are prepared and edited, and recognizes that the great majority of these changes have increased efficiency and clarity in the presentation of legal arguments. Here, however, Casas' excessive use of the computer mandates that the court ORDER Casas to adhere to the advised Blue Book provisions for court submissions. ("Generally, only two typefaces are used in court documents and legal memoranda—ordinary type, such as courier, and italics (indicated in word-processed or typewritten materials by underscoring)." A Uniform System of Citation, pp. 11 et seq. (15th ed. 1991)). Any further submissions utilizing more than two typefaces will not be accepted, and in addition Casas will be sanctioned for such submissions.

### V. Conclusion

We adopt the magistrate's recommendations. We DENY Mita's motion to dismiss for fraud on the court and its motion for summary judgment based on Casas alleged laches. We GRANT Casas' motion for an

injunction barring Mita from impairing the 1989 Agreement without just cause. Furthermore, we ORDER all attorneys to refrain from filing unnecessarily lengthy submissions and ORDER them to cease from including in these submissions personal attacks. We FINE Casas' counsel, Mr. Luis A. Melendez–Albizu, $250.00. Lastly, we ORDER Casas to limit itself to two typefaces in its briefs.

**SO ORDERED.**