894 A.2d 705

IN THE MATTER OF THE APPLICATION OF CAPE MAY COUNTY SHERIFF JOHN F. CALLINAN REQUESTING RELIEF AGAINST J.T. PURSUANT TO R. 4:67–1.

Superior Court of New Jersey
Law Division (Civil)
Cape May County

Decided December 1, 2005.

*Barbara L. Bakley-Marino,* Assistant Cape May County Counsel, for Cape May County Sheriff John F. Callinan.

J.T., pro se.

VALERIE H. ARMSTRONG, A.J.S.C.

Pursuant to *R.* 4:67–1a, Cape May County Sheriff, John F. Callinan (hereinafter "Sheriff"), seeks an order barring J.T.[1] from entering the Cape May County Courthouse (hereinafter "courthouse"). In the alternative, the Sheriff seeks to require J.T. to provide advance notice that he will be entering the courthouse.

The verified complaint filed in this matter was accompanied by a proposed order to show cause, requesting *ex parte* restraints barring J.T. from entering the courthouse pending the return date. The court declined to enter the restraints. A summary hearing on the verified complaint was held on November 3, 2005.

The facts in this matter are undisputed. The Cape May County Superior Court and the Atlantic County Superior Court compose Vicinage 1. Vicinage 1 is one of fifteen vicinages which form the New Jersey Superior Court.

J.T. was a litigant in the Cape May County Family Part. He became frustrated and angry at the outcome of litigation involving

---

[1] The original caption of this matter bore J.T.'s full name. However, because this decision makes reference to litigation involving J.T. and the Division of Youth and Family Services, the caption of this case is amended to utilize the initials "J.T.".

him, his young son, the mother of his son, and the Division of Youth and Family Services (hereinafter "DYFS"). The final order entered in the DYFS litigation prohibited J.T. from having contact with his child until further court order.

A June 5, 2003 incident report prepared by a Cape May County sheriff's officer indicates that after a court proceeding in the DYFS matter, while J.T. was being escorted from the courtroom to the Cape May County Jail, J.T. stated, "When I get out, I'm going to kill one of those assholes." The escorting sheriff's officer viewed this statement as a threat directed toward the Family Part judge, the Deputy Attorney General representing DYFS and the Law Guardian representing J.T.'s child.

In 2003, J.T. wrote several letters to the Family Part judge assigned to hear the DYFS litigation. The letters were offensive, vituperative, and at times, threatening to the judge and two of the attorneys involved in the DYFS matter. The transmittal of the letters to the judge resulted in J.T. being charged on November 14, 2003, with fourth degree harassment in violation of *N.J.S.A.* 2C:33-4e. J.T. pled guilty to the charge. On January 22, 2004, J.T. was sentenced to serve eighteen months in state prison.

In 2003 and 2004, J.T. also wrote several letters to the Public Defender pool attorney who had represented him in the DYFS litigation. He expressed significant anger at the outcome of the litigation, including dissatisfaction with his attorney's representation. Additionally in 2004, J.T. sent several letters to the Criminal Part sentencing judge, objecting to the outcome of the DYFS litigation. In July 2004, J.T. sent a similar letter to the Family Part presiding judge.

Shortly after J.T.'s release from state prison in April 2005, he spoke by telephone to a Cape May County Family Part staff member. J.T. inquired as to the whereabouts of his son, and stated that he wanted to see his child. During this conversation, J.T. referred to the Family Part judge as the "scumbag that ruined my life...." Pursuant to the verified complaint filed in this

matter, certified to by the Sheriff, the Sheriff asserts at paragraph 30:

> "On the same date, prior to this call [J.T.] contacted Family Court with the same request and admitted that he 'did flip out in court and made some threats.' He ended the conversation with the probation officer by stating that 'I need to see my son, and if I don't then someone is gonna ....' With that he stopped and said, 'Never mind.' He further stated that 'If I don't see my son, then I am going to go crazier than crazy.'"

During the summary hearing, the following arguments were advanced in support of the Sheriff's request to bar J.T. from entering the courthouse:

1. J.T. is a "known danger."

2. J.T.'s correspondence predicts J.T.'s future behavior.

3. The level of hatred expressed in J.T.'s letters is extreme.

4. J.T.'s anger is directed at two lawyers and a judge who are physically present in the Cape May County Courthouse on a regular basis. It is possible that at any given time, the lawyers and the judge could be in an area of the courthouse where sheriff's officers are not routinely stationed, such as a conference room, a restroom, and certain hallways.

5. If the sheriff's officer assigned to the front desk of the courthouse, where all who enter the building are screened for security purposes is "busy," J.T. might enter the building without the sheriff's officer appropriately "flagging" him before he gains access to the courthouse, thereby breaching courthouse security.[2] The Sheriff does not seek to bar J.T. from the courthouse steps, the courthouse parking lot, or the perimeter of the courthouse.

6. If the Sheriff does not know in advance that J.T. intends to enter the courthouse, he will be unable to implement the steps necessary to provide the most secure environment.

---

[2] Screening includes passing through a metal detector and x-raying the contents of any packages, bags, briefcases, or other items carried by all persons attempting to enter the building.

7. Requiring the Cape May County Sheriff's Department to maintain extra vigilance while J.T. is in the courthouse will place a strain on Department resources by diverting a sheriff's officer from other duties in order to monitor J.T.'s behavior.

8. The Sheriff is not seeking to preclude J.T. from access to the judicial process. Rather, he is requesting that venue of any legal matters in which J.T. is involved, be transferred to the Atlantic County Superior Court. At page 6 of the Sheriff's brief, the following is asserted:

> In the case at Bar, the relief sought is not to prevent J.T. from having access to the judicial system. The relief seeks to prevent access to a particular location. He will be free to file any applications he desires in Atlantic County. In essence, this application is nothing more than a request to change venue of any papers, motions, or pleadings filed by the Defendant thereby obviating a need for his appearance at the Cape May County Superior Court. Venue can be changed "if there is substantial doubt that a fair and impartial trial can be had in the county where venue is laid." (Court Rule 4:3(a)(2)) In light of the content of J.T.'s letters, there is *no* doubt he believes he will not receive a "fair and impartial trial" in Cape May County. Therefore, he should not object to the relief sought.

9. Because J.T. currently resides in Atlantic County, it is appropriate for him to file any necessary court actions in Atlantic County rather than Cape May County. The Sheriff specifically argues that "the First Amendment right of the defendant to go to a county courthouse in a county where he does not reside when he has access to another vicinage courthouse, pales in comparison to the plaintiff's constitutional oath to provide a safe environment to all individuals at the county courthouse." *See Sheriff's brief at 5.*

10. The Cape May County Courthouse is owned by Cape May County. Hence, the County is concerned about liability issues should J.T. engage in disruptive behavior while present in a County owned facility.

During the summary hearing, J.T. did not deny his anger at the outcome of the DYFS litigation. However, he indicated that he had no intention of hurting anyone. J.T. stated that when considering his prior experience at the Cape May County Courthouse, he has no interest in being inside the courthouse, other than when his presence is absolutely necessary. In fact, J.T. noted that if he is

barred from entering the courthouse, he would request the court to order that "venue" of any future incarcerations in the Cape May County Jail be transferred to another county, asserting that he was injured by a Cape May County corrections official during a previous incarceration.

*N.J.S.A.* 2B:6–1d establishes that "The sheriff of each county shall provide the security for the Law and Chancery Divisions of the Superior Court sitting in that county in the manner established by the assignment judge in the county." The website for the Cape May County Sheriff's Department, *http://sheriff.co. cape-may.nj.us/,* acknowledges this responsibility, stating that among the duties of its Law Enforcement Division is the provision of "protection and security to judges, jurors, witnesses and anyone having business before the courts."

That court security is an issue of local, state, and national concern is not debatable. A Model Court Security Plan (hereinafter "Plan") approved by the New Jersey Supreme Court on September 17, 2001, emphasizes the following at page 3:

> Protecting the security of the Court, its supporting judicial facilities, and the persons who take part in court proceedings, programs, services, and activities, is a subject of great importance. Thousands of persons utilize court facilities each day. They include judges, lawyers, jurors, litigants, witnesses, judicial staff, press, and the general public. Their safety must be reasonably assured to allow them to carry out their roles in the administration of justice.

The Plan further states at page 20:

> Security in the courtroom cannot stand by itself. In order to deter violent or disruptive episodes, **the area around the courtrooms and the entire courthouse should be protected as a part of any security plan. Developing a plan for the entire building or complex requires the cooperation not just of the Courts and Sheriff, but of the governing body of the county and any other agencies occupying space in the courthouse**....
> [Emphasis added.]

Case decisions relied upon by the Sheriff in support of his request for injunctive relief barring J.T. from entering the Courthouse involve the issuance of injunctions restricting a litigant from repeatedly filing complaints which assert claims that have previously been fully litigated. See, *Casas Office Machs, Inc. v. Mita*

*Copystar Machs. Inc.*, 847 *F.Supp.* 981 (D.P.R.1993), order vacated on other grounds, 42 *F.*3d 668 (1st Cir.1994); *Matter of Packer Ave. Assocs.*, 884 *F.*2d 745 (3rd Cir.1989); *Abdul–Akbar v. Watson*, 901 *F.*2d 329 (3rd Cir.1990). Additionally, the Sheriff relies upon several cases involving contempt proceedings resulting from a litigant's disrespectful, disruptive or obstructionist conduct during the course of a judicial proceeding. *Matter of Duane, Morris & Heckscher, LLP*, 315 *N.J.Super.* 304, 718 *A.*2d 244 (App.Div. 1998); *State v. Gonzalez*, 134 *N.J.Super.* 472, 341 *A.*2d 694 (App. Div.1975); *State v. Sax*, 139 *N.J.Super.* 157, 353 *A.*2d 113 (App. Div.1976).

The relief requested in the instant case is different from requests to limit access to the judicial process through the issuance of injunctions to prevent repeated frivolous filings, or the issuance of orders for contempt when a litigant has disrupted a judicial proceeding. The Sheriff's request is to bar J.T. from entering the Cape May County Courthouse for any reason, and to require J.T. to "access" the judicial system by transferring venue of any court proceeding involving J.T. to the Atlantic County Superior Court. While the relief requested implicates issues involving the legal rights of the public to access public buildings, including courthouses, in fact, the primary issue in the instant case is the Sheriff's statutory responsibility to provide security at the Cape May County Courthouse.

The Sheriff's application is a reminder of the inevitable tension which can arise in adversarial proceedings, occurring on a daily basis in courthouses throughout the nation, where court officials attempt to provide open access to courts and the judicial system within a secure courthouse environment. There is little question that the tone and content of J.T.'s letters, and the fact that he pled guilty to harassing a judge are a continuing cause for concern. However, the Sheriff provides no legal authority for transferring his statutory responsibility to address courthouse security risks allegedly posed by J.T., to the Atlantic County Sheriff's Department.

The Sheriff asserts that the letters authored by J.T. are a predictor of disruptive or dangerous behavior should J.T. enter the Cape May County Courthouse. I conclude that neither the Sheriff nor the court are capable of predicting J.T.'s behavior inside or outside the courthouse. However, for argument's sake, if the Sheriff is correct that J.T.'s future behavior can be predicted, then it is also a safe prediction that should J.T. receive an unfavorable result in a Family Part proceeding venued in Atlantic County, he will present similar security concerns in the Atlantic County Superior Courthouse.

The Sheriff observes that it should be assumed that J.T. believes he cannot receive a fair and impartial trial in Cape May County. There is no basis to conclude that J.T.'s court proceedings cannot be conducted in a fair and impartial manner in Cape May County. Nevertheless, it is patently clear that the Family Part Judge who was the victim of J.T.'s harassment for which J.T. was convicted, is conflicted from deciding future litigation in which J.T. is involved. However, the Sheriff's requested relief ignores the fact that there are six other judges assigned to the Family Part in Vicinage 1, who are not conflicted from hearing J.T.'s matters, any of whom may hear the matter in the Cape May County Courthouse.

The New Jersey Rules of Court do not contemplate the entry of an order transferring venue based upon a Sheriff's acknowledgement that he is unable to provide adequate security in the courthouse. Further, while the Sheriff appears to be focused on J.T.'s Family Part litigation, the possibility exists that J.T. could become involved in future litigation venued in the Cape May County Superior Court's Equity, Civil or Criminal Divisions, either as a party or a witness. The Sheriff's position fails to recognize that any litigation to which J.T. is or may become a party, will involve one or more other parties, each of whom has an interest in where venue is laid. Further, granting the relief requested by the Sheriff under the facts of the instant case, leaves the door open to possible forum shopping by litigants who allege

that security in certain courthouses is superior to that provided in other courthouses.

State legislation requires that security be provided by each County Sheriff for the Superior Courthouses located in that county. Lawyers and judges who may have been the recipients of threats or subjected to harassing behavior by disgruntled litigants are entitled to the confidence that they are more secure inside the courthouse where armed Sheriff's officers provide security than anywhere else outside the courthouse building. They are also entitled to expect that all twenty-one sheriffs throughout this state are providing adequate security in each Superior Courthouse.

In the instant case, the Sheriff believes that J.T. is a known security risk. He asserts that if he is not advised in advance as to when J.T. will enter the courthouse, the Sheriff's Department might not be prepared to devote the resources necessary to ensure that J.T. does not become disruptive. This is indeed a startling revelation. If the Sheriff is unprepared to deal with J.T.'s presence in the courthouse, even greater concerns exist as to those litigants who have not openly expressed their anger toward the judge and others involved in their case, specifically, litigants who may be equally as angry or more angry than J.T. and who may vent their anger inside the courthouse without any warning at all.

The Sheriff has failed to provide a rational reason as to why the instant relief is requested as to J.T., as opposed to other litigants who access courthouses on a daily basis, including litigants who may have committed crimes of violence, have served their sentences, but who remain involved in a variety of ongoing judicial proceedings. For example, on a daily basis throughout the state, domestic violence victims remain involved in ongoing litigation with their abusers to address issues of child support, parenting time, or violations of their restraining orders.

The safety of all persons, including judges and lawyers, who enter a courthouse, is of paramount concern. On a daily basis, thousands of people throughout this State litigate a host of issues which are controversial and difficult, including, but not limited to,

criminal prosecutions, eviction proceedings, domestic violence matters, child abuse and neglect cases, and other emotionally charged matters. The nature of these controversies and the unfortunate life circumstances of certain litigants can present numerous security challenges. However, barring a litigant from entering a particular courthouse, and transferring venue of his court matters to another county is not the solution. Doing so simply shifts the security risk to another courthouse and another Sheriff's Department. In the instant case, the solution is for the Sheriff to do what he is statutorily charged to do, namely, provide adequate security in the Cape May County Courthouse, whether J.T. is present or not.

Simply put, there is absolutely no merit to the Sheriff's request for relief to bar J.T. from the courthouse, or to require J.T. to provide advance notice that he intends to enter the building. It is the Sheriff's responsibility pursuant to *N.J.S.A.* 2B:6–1d to provide security throughout the Cape May County Courthouse, whatever it takes.

The request for relief is denied. The complaint is dismissed.